519 So.2d 231 (1988)
Rita Carabeo Pernia, Wife of and Jose PERNIA
v.
Mervin TRAIL, M.D.
No. 87-CA-581.
Court of Appeal of Louisiana, Fifth Circuit.
January 11, 1988.
Writ Denied March 11, 1988.
Martin E. Regan, Jr., Regan & Associates, New Orleans, for plaintiffs-appellants.
Charles A. Boggs, Thomas W. Lewis, Boggs, Loehn & Rodrigue, New Orleans, for defendant-appellee.
Before KLIEBERT, BOWES and GAUDIN, JJ.
KLIEBERT, Judge.
Plaintiffs Rita and Jose Pernia brought this medical malpractice action for recovery of damages allegedly sustained as a result of defendant Dr. Mervin Trail's negligent performance while surgically removing a cyst from Mrs. Pernia's throat. After a judge trial Dr. Trail's exception of prescription was overruled and judgment rendered dismissing the Pernias' suit on the merits for failure to prove Dr. Trail was guilty of negligence or malpractice. The Pernias appealed. We affirm the judgment of the trial court.

FACTS
Mrs. Rita Pernia is a fifty-four year old college professor. On April 21, 1978 she was referred to Dr. Marvin Trail, a specialist in diseases of the ear and larynx (otolaryngologist) for treatment of a lump in her throat. Dr. Trail's diagnosis was a thyroglossal duct cyst, and he continued Mrs. Pernia on antibiotics as prescribed by the referring physician. When the antibiotics failed to effect improvement, Dr. Trail recommended removal of the cyst by surgery. Mrs. Pernia signed the appropriate consent form and surgery was performed on May 9, 1978.
*232 After incision the cystic mass was visualized as extending from the cricothyroid membrane to the infrahyoid area. A second mass was identified as either a projection of the thyroid gland or a pyramidal lobe. After removing the second mass Dr. Trail utilized blunt and sharp dissection to retract the thyroglossal duct cyst on its upper end. The lower end of the tract turned 180° superiorly behind the thyroid cartilage. The inferior half of the thyroid cartilage was ensized and the tract visualized as penetrating the underlying membrane for two to three millimeters. The entire tract, including the cyst, was excised in one piece. The edges of the thyroid cartilage were reapproximated with a No. 30 wire. Before concluding the operation Dr. Trail performed a laryngoscopic examination which revealed the presence of a possible mucosal laceration, three to four millimeters in length, near the anterior commissure.
Post-surgical progress was uneventful; the sutures were removed and the vocal cords moved well. However, when examined on July 12, 1978 Mrs. Pernia complained of hoarseness. Dr. Trail found no objective basis for the complaint as the vocal cords appeared normal and moved satisfactorily. Dr. Herbert Marks, an associate of Dr. Trail, noted a slight edema (swelling) of the vocal cords but otherwise movement was good. Mrs. Pernia was given a prescription for "Valium" and told to consult a speech therapist for problems with articulation and phonics. It was Mrs. Pernia's last visit with Dr. Trail.
Mrs. Pernia sought treatment from Dr. Lawrence Travis, an otolaryngologist, on September 27, 1979 for congestion in her ears associated with post-nasal drainage and chronic sore throat. She informed Dr. Travis of hoarseness and vocal cord dysfunction since the operation of May 9, 1978. Examination revealed a slightly atrophic right vocal cord. Dr. Travis intervened surgically on October 16, 1979, using a laser to divide scar tissue which was believed to be pulling down slightly on the right vocal cord. No improvement was noted. A second diagnostic laryngoscopy revealed a small web of scar tissue involving the right vocal cord and the anterior commissure, and the left vocal cord was atrophic and scarred. A sterile glycerine solution injected into the left vocal cord to increase its bulk effected no demonstrative improvement. Final examination on April 23, 1980 revealed the posterior commissure rotated to the left. Dr. Travis referred Mrs. Pernia to a speech therapist.
From April through June of 1980 Mrs. Pernia was treated by Dr. Oscar Valdes, a psychiatrist, for depression with anxiety secondary to the loss of her normal vocal capabilities. She filed the instant suit on September 25, 1980, claiming the hoarseness and vocal cord dysfunction impacted on her ability to teach and to support herself and her family. After suit was filed she was examined by Dr. Francis LeJuene, an otolaryngologist, who diagnosed a "bowing" or gap in the approximation of the vocal cords. The central issues at trial were whether the thyroglossal duct cyst operation was negligently performed and whether, as a proximate result of negligence, Mrs. Pernia suffered injuries that would not otherwise have been incurred.

PRESCRIPTION
Counsel for Dr. Trail reurges the exception of prescription in appellate brief. Since he does not wish to have the judgment modified, revised or reversed, no answer to the appeal or separate appeal was necessary and the prescription issue could be addressed by this court. La.C.C.P. Article 2133; Varnado v. Ins. Corp. of America, 484 So.2d 813 (1st Cir.1986) writ denied 489 So.2d 248; Clark v. McDonald's System, Inc., 383 So.2d 61 (2nd Cir.1980) writ denied 386 So.2d 95. However, in the interest of judicial economy we choose to decide the case on the merits without addressing the prescription issue.

LIABILITY OF DR. TRAIL
The burden of proof in cases such as the present is set forth in LSA-R.S. 9:2794 as follows:
A. In a malpractice action based on the negligence of a physician licensed *233 under R.S. 37:1261 et seq., a dentist licensed under R.S. 37:751 et seq., or a chiropractic physician licensed under R.S. 37:2801 et seq., the plaintiff shall have the burden of proving:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, dentists, or chiropractic physicians within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill, and
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
Counsel for Mrs. Pernia acknowledged at the outset that Dr. Trail had the necessary knowledge and skill to perform the surgery in question. Counsel sought, through the testimony of two expert witnesses, Dr. Herbert Dietrich and Dr. Cyril Costello, to establish nine separate instances in which Dr. Trail allegedly failed to use reasonable care and diligence, along with his best judgment in the application of his skill:
(1) Methylene Blue should have been injected into the cyst so it could be better identified;
(2) A horizontal incision should have been used to dissect the cricothyroid membrane instead of a vertical incision;
(3) A periscope or nasopharyngoscope should have been inserted into the cricothyroid membrane in an attempt to visualize the tract;
(4) A circular saw rather than a scapel should have been utilized;
(5) A drill rather than a scapel should have been utilized;
(6) A laser rather than a scapel should have been utilized;
(7) The tract should have been cut off at the entrance to the cricothyroid membrane;
(8) A complete rather than partial laryngofissure should have been performed;
(9) The three to four millimeter laceration in the area of the anterior commissure was evidence of malpractice per se.
In post trial memorandum and in appellate brief counsel for Mrs. Pernia abandoned the first through sixth enumerated items and concentrated on the seventh, eighth and ninth items. In its detailed reasons for judgment the trial court stated:
"As the trial progressed, and as plaintiff indicates in his rather thorough brief, plaintiff argues that the defendant doctor erred by following the `textbook theory' in removing the entire T.G.D. instead of leaving a portion, and, instead should have cut the duct. In short, plaintiff contends that defendant doctor was at fault for using the well documented procedure agreed upon by all the medical textbooks presented at trial. Presumably, plaintiff contends that the defendant doctor should have cut off the T.G.D., spilling whatever cancer cells or infection which might have been present into the lining of the duct.
A plaintiff's expert, Dr. Herbert Dietrich, who had not performed this surgery in some 10-15 years cast grave doubts as to his judgment and expertise, when he suggested `What's wrong with a little innovation?', apparently suggesting that Dr. Trail was using bad judgment in not going through with an experimental horizontal incision of the cricothyroid membrane, as the patient lay on the operating table.
Plaintiff's other expert, Dr. Costello, who was not an Otolaryngologist and *234 who had never performed this type of surgery [for fifteen years], suggests likewise that the T.G.D. should have been chopped off without any regard to the possibility of spreading cancer cells or infection, and in disregard of the well established procedure of removing the entire T.G.D.
The plaintiff further argues that the technique of a partial spreading of the thyroid cartilage was bad judgment. That the defendant doctor should have completely bivalved the thyroid. Dr. Lyons, a defense expert, testified he used that procedure in similar surgery, but said the partial spreading was a reasonable and acceptable alternative.
It is abundantly clear that the defendant had no choice but to trace out the entire thyroglossal duct and remove it in its entirety.
The areas of fault alleged by the plaintiff were dispelled by the testimony of the defendant's witnesses. The plaintiff failed to affirmatively meet the burden of proof which is more likely than not that the defendant doctor has failed in the three areas required by law in LRS 9:2794.
While the plaintiff attorney cleverly and thoroughly cross-examined the experts brought forth by the defense, he was only able seemingly to negate to some limited extent the validity of their testimony. The thorough re-direct examination conducted by defendant counsel satisfied the court as to any doubt cast by plaintiff counsel's cross examination questions.
The defendant's expert witnesses showed clearly the lack of validity of the testimony of Drs. Costello and Dietrich. It seemed that they were acting more as counsel for the plaintiff rather than independent expert witnesses.
The court further felt that the plaintiff's failure to call Dr. Travis, the doctor who allegedly found the defendant's surgery to be the cause of plaintiff's problems, was unusual to say the least.[1] This was particularly unusual since that doctor is within the metropolitan area, and was the physician who led plaintiff to believe that the surgery performed by the defendant was the cause of her problem.
The plaintiff has failed to establish the burden of proof necessary to find the defendant doctor negligent or guilty of malpractice. The evidence in fact shows that Dr. Trail performed the surgery in this case well above the standards required by the law." (Footnote added)
In brief on appeal both parties quote extensively from the testimony of the various experts and treating physicians. As shown hereafter, each allegation of negligence advanced by plaintiffs' experts was refuted by defendant's experts. Thus, the trial was a classic "battle of experts." Plaintiffs' experts were Dr. Herbert Dietrich, a semi-retired otolaryngologist from Georgia who had not performed surgery since 1972, and Dr. Cyril Costello, a board certified general surgeon from St. Louis who had performed fifty to seventy-five thyroglossal duct cyst surgeries in the past but none for fifteen years. Both Dr. Dietrich and Dr. Costello were contacted for Mrs. Pernia by a referral service called Medical Quality Foundation. Defendant's experts included Dr. Francis LeJeune, Jr., a board certified otolaryngologist who is a clinical professor in the field at the Tulane University School of Medicine and who examined Mrs. Pernia at her attorney's request; Dr. George Lyons, head of the otolaryngology department at the LSU Medical School, and Dr. Herbert Marks, a board certified otolaryngologist who assisted Dr. Trail during the original operation.
Dr. Dietrich and Dr. Costello acknowledged the "textbook" treatment for thyroglossal duct cysts is total excision of the tract but contended the present was not a "textbook situation" in light of the location of the tract. They felt a pre-operative examination of the internal larynx for evidence of abnormal growth, in the absence *235 of positive findings, would have indicated that the tract be clipped off at the entrance to the cricothyroid membrane rather than excised from within the membrane. However, Dr. Dietrich admitted that medical literature is replete with instances of recurrences of cysts when fragments of the tract are not excised. Both Dr. Dietrich and Dr. Costello felt that if a laryngofissure was necessary a complete rather than a partial laryngofissure should have been effected by Dr. Trail when tracing the tract because greater stress is placed on the vocal cords during a partial laryngofissure. Dr. Dietrich felt the three to four millimeter laceration in the anterior commissure of the larynx was an anomaly, while Dr. Costello felt it was related to the ensizing of the thyroid cartilage. Both Dr. Dietrich and Dr. Costello felt Dr. Trail used exceedingly poor and substandard procedures in light of the available alternatives and the location of the tract.
Dr. Lyons, Dr. LeJeune and Dr. Marks were in agreement that it was imperative the entire tract be removed in order to prevent recurrence of the condition because secondary removal is much more difficult as the surgical planes are no longer identifiable and scar tissue is involved. In their opinion, leaving portions of the tract in the neck bordered on malpractice in light of the high infection recurrence rate. Their testimonies were corroborated by medical textbooks which indicated incomplete removal of the tract represents the most common error in the treatment of thyroglossal anomalies. Dr. Lyons and Dr. LeJeune also testified it was good surgical procedure to make a half incision into the thyroid cartilage rather than opening the entire larynx by laryngofissure because proper surgical procedure calls for avoiding intrusion into the larynx as much as possible. Dr. Lyons, Dr. LeJeune and Dr. Marks felt the most likely cause of the laceration in the area of the anterior commissure was either the endotrachal tube or the normal extension of the surgical incision on the anterior side of the thyroid cartilage, neither of which constituted medical malpractice as they were natural consequences of the surgery. The three doctors agreed that Dr. Trail exercised reasonable judgment at all times.
Where the testimony of expert witnesses differ, it is largely a matter of fact for the jury (the trier of the facts) to determine the most credible evidence and a finding of fact in this regard will not be overturned unless manifest error appears in the record. Nailor v. International Harvester Co., 430 So.2d 784 (5th Cir.1983) writ denied 437 So.2d 1148. The function of the appellate court is to determine whether there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, and to determine whether the record establishes that the finding is not clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Matthews v. La. State University Medical Center, 467 So.2d 1238 (2nd Cir.1985).
The trial judge went to great lengths to make it clear that he found the defense experts more credible than the plaintiffs' experts. We discern no clear error in his conclusion, for our examination of the record does not convince us that Mrs. Pernia established by a preponderance of the evidence that Dr. Trail failed to use reasonable care and diligence, along with his best judgment, in the application of his skills as an otolaryngologist during the course of surgery to remove the thyroglossal duct cyst. Accordingly, we believe the trial judge's ruling in favor of Dr. Trail must be affirmed. As we discern no negligence, we need not inquire into the relationship between the complained of injuries and the surgical procedure.
All costs of the appeal are to be borne by the appellants.
AFFIRMED.
NOTES
[1] Defendant introduced Dr. Travis' deposition into evidence. However, it is not included in the appellate record. A notation on the exhibits index reflects it was not received in the evidence room. Twenty-two such notations are indicated on the exhibits list.