KLIEBERT, Judge.
This medical malpractice action was originally filed by Mrs. Cynthia Swartzlander for damages alleged to have arisen from a delayed diagnosis of breast cancer. The delay resulted from the loss of breast tissue taken in a biopsy performed by Dr. Embry W. Williams, III, at Bonnabel Hospital. After removal of both breasts and parts of several organs, Mrs. Swartzlander died from the cancer on August 13, 1985. Her spouse, Joseph P. Swartzlander, Jr., and her five children, Michael Thomas, a major; and Joseph E., Ill; Heather; Kevin; and Monica Swartzlander, through their tu-trix, joined in the suit and, in addition to her claims, urged their claims for loss of consortium and their wrongful death action.
The claims were submitted to a medical review panel. It absolved Dr. Williams of liability but found that Bonnabel failed to comply with the appropriate standard of care. Bonnabel settled for the full $100,-000 limits of its liability under the Medical Malpractice Act. Other health care providers also settled their claims. A trial was had before a six person jury against the Patient’s Compensation Fund. The jury awarded $50,000 on Mrs. Swartzlander’s personal claim but denied recovery on the survivors’ wrongful death action. The survivors brought a devolutive appeal on the denial of damages for their mother’s wrongful death. For the reasons hereafter stated we affirm.
The facts are virtually undisputed.
In May 1985, about the time she stopped breast-feeding her youngest child, Mrs. Swartzlander, a 38 year old mother, discovered lumps in her right breast and sought treatment from Dr. Embry Williams, III. He confirmed the presence of lumps, extracted fluids for testing and scheduled her for a biopsy at Bonnabel Hospital on July 14, 1984.
In error, Bonnabel Hospital personnel did not send the removed masses (extracted on July 14, 1984) to a pathologist to perform a histopathological study[1] as had been ordered by Dr. Williams. Instead, the specimens were shipped to a Georgia laboratory *1341 to perform a hormonal analysis.[2]
Two weeks later, Dr. Williams, concerned by the absence of a pathological report, investigated and found no pathological report was done and no specimen remained so that a study could be done. Dr. Williams called in Mrs. Swartzlander and her husband and informed them of what had happened and said the only thing they could do was wait and see if the lumps reappeared.
Approximately three months later, in October 1984, a lump reappeared and another biopsy was performed. A histopathological study was performed and Mrs. Swartzlan-der diagnosed as having cancer. A modified radical mastectomy was performed on her right breast in November of 1984 and chemotherapy treatments begun. Lumps were later discovered in the left breast, necessitating a mastectomy of the left breast. The cancer spread to other internal organs and caused Mrs. Swartzlander’s death on August 13, 1985.
At trial negligence was not made an issue. It was stipulated Bonnabel had breached the appropriate standard of care in failing to have a pathologist examine the specimen as had been ordered by her treating physician.
The most accurate way to determine whether a mass is cancerous is by a pathologist performing a histopathological study. Since the opportunity to perform the study on the masses excised in July 1984 was lost, the extent to which the cancer had progressed as of July 1984 was uncertain and critical to Mrs. Swartzlander’s survivors’ wrongful death claim.
To recover on their wrongful death action, plaintiffs had the burden of proving the cause-in-fact of Mrs. Swartzlander’s death was the delay in commencing the cancer treatment. In an effort to meet this proof, plaintiffs presented the expert testimony of William Russel, M.D., who was qualified as an expert in pathology and in the diagnosis of cancer. He testified regarding the Surveillance, Epidemiology, and End Results (SEER) study, which is a nationwide study from fifteen to twenty urban centers that collect and categorize information on cancer and predicts survival rates of cancer patients. He said cancer development in a person is grouped by stages 1 through 4; stage 1 being basically the initial developmental stage of the cancer with the patient having a relatively high five year survival rate, while stage 4 is highly developed cancer with a relatively low five year survival rate.
Based on the clinical notes of other examinations of the decedent made prior to the July 1984 biopsy, Dr. Russell categorized Mrs. Swartzlander’s cancer as being in stage 2 of its development in July of 1984 with an associated 88% chance of survival for five years according to the SEER study. In October of 1984, based on clinical and pathological tests performed at that time, Dr. Russel categorized the decedent as a stage 3A patient with a 57% five year survival rate. Hence, he concluded her chances to survive five years was decreased 31% by the delay in the commencement of cancer treatment.
Based on Dr. Russel’s testimony, plaintiffs argue that Mrs. Swartzlander was deprived of a greater opportunity of survival by the delay in the commencement of treatment. Although the SEER study and Dr. Russel’s testimony would in general support a conclusion the delay in the commencement of cancer treatment could have deprived Mrs. Swartzlander of a greater chance of survival for five years and thus support a finding she had a personal claim for damages, as hereinafter shown, given the expert testimony offered by the defendants, it does not prove the delay in commencing the treatment was the cause in fact of her death.
Defendants offered the opinion of several experts who concluded the cancer had *1342 developed into the lymphatic ductile system before July 1984 and hence was not treatable in July 1984. Therefore, they concluded the delay in the commencement of treatment made no difference, for Mrs. Swartz-lander would have died from cancer with or without cancer treatment.
Thus, the contested issue submitted to the jury was — Did the delay in initiating the cancer treatment cause Mrs. Swartzlan-der to die? The jury responded to the interrogatories submitted to it as follows:
A. Survival Action of Cynthia Swartzlander
Loss of earning capacity $ -0-
Mental anguish, disgrace $50,000.00
B. Joseph Swartzlander, II
Loss of consortium $ -0-
C-D. These interrogatories were responsed to as follows for each of Mrs. Swartzlander’s five surviving children
Loss of love and affection, guidance and support $ -0-
On appeal, plaintiffs list one specification of error, as follows:
“It was manifest error, error of law and abuse of discretion, for the jury to disregard stipulations of fact and instructions of law in reaching its verdict awarding survival damages to decedent, but failing to award wrongful death damages to decedent’s family, when it was uncontested that decedent died of the same condition (breast cancer) that was belatedly diagnosed and treated because of the negligence of defendant, and for which survival damages were awarded.”
Thus, the thrust of plaintiffs’ argument is that since the jury made an award for Mrs. Swartzlander’s personal claims, it found a causal connection between Bonna-bel’s negligence and the progress of the cancer. Therefore, since Mrs. Swartzlan-der died of the same cancer, the jury erred in failing to award damages to Mrs. Swartzlander’s survivors for her wrongful death from the cancer.
The essential elements of negligence under Louisiana Civil Code Article 2315 are: (1) the defendant was a cause-in-fact of the plaintiff’s harm; (2) a duty existed on the part of the defendant, which duty was imposed to protect against the particular harm involved; (3) violation of the duty owed; and (4) actual damages. LSA-C.C. art. 2315; Hill v. Lundin and Associates, Inc., 260 La. 542, 256 So.2d 620 (1972); Shafouk Nor El Din Hamza v. Bourgeois, 493 So.2d 112 (5th Cir.1986).
The fallacy in plaintiffs’ argument is the failure to recognize that simply because Mrs. Swartzlander died of cancer does not establish the delayed diagnosis was the cause-in-fact of her death. Stated another way, plaintiffs failed to prove but for the delayed diagnosis Mrs. Swartzlan-der would have lived.
In essence the issue posed to the jury was — What were the damages caused by Bonnabel’s admitted fault? The jury heard credible evidence from qualified experts on each side. For whatever reasons, the jury elected to side with the defendants’ experts.
The factual findings of the jury, particularly those based upon evaluations of credibility, should not be reversed on appeal unless clearly wrong. Bivalacqua v. Aube, 493 So.2d 209 (5th Cir.1986). Where the testimony of expert witnesses differ, it is largely a matter of fact for the jury to determine the most credible evidence, and the jury’s findings will not be overturned unless manifest error appears in the record. Pernia v. Trail, 519 So.2d 231 (5th Cir.1988). The reviewing court must give great weight to the factual conclusions of the trier of fact, and where there is a conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Canter v. Koehring, 283 So.2d 716 (La.1973); Nu-Lite Electrical Wholesalers, Inc. v. Deckard & Treadaway Electric Air Conditioning and Refrigeration, 498 So.2d 120 (5th Cir.1986).
*1343 We therefore affirm the judgment of the trial court. Plaintiffs are to bear the costs of the appeal.
AFFIRMED.

. The purpose of the study is to determine whether the tissue includes cancer cells.

. The purpose of which is to determine the type of therapy to employ where the mass was previously found to be cancerous.