524 So.2d 1383 (1988)
Clara Singleton DAY
v.
Rhoney WARREN, et ux.
No. CA 87 0342.
Court of Appeal of Louisiana, First Circuit.
April 19, 1988.
*1384 Richard A. Schwartz, Amite, for appellantClara S. Day.
Robert J. Carter, Greensburg, for appelleeRhoney Warren.
Before SHORTESS, LANIER and CRAIN, JJ.
LANIER, Judge.
These proceedings commenced with a boundary action, La.C.C. arts. 784-796 and La.C.C.P. arts. 3691-3693, filed by Rhoney [1] Warren and his wife, Barbara Jenkins Warren, against Clara Singleton Day. Day subsequently filed a separate action against the Warrens contending the Warrens built an oxidation pond partially on her property, that the presence of the pond constituted a continuous trespass on her property, that the oxidation pond emitted noxious gases and odors and overflowed and caused damage to the rest of her property, and that the operation of the oxidation pond was a nuisance within the purview of La.C.C. arts. 666-669. Day prayed for money damages and injunctive relief. These two suits were consolidated for trial. The trial court rendered judgment in the boundary action fixing the boundary between the Warrens and Day in accordance with the survey map of M.K. Johnston, dated February 18, 1984.[2] Judgment was rendered in the nuisance action in favor of Day and fixing the damages to Day's property at $1,000 per acre on the total acreage north of the Louisiana Highway 1046 right-of-way,[3] ordering Rhoney Warren to pay the damages in 60 days and ordering that "Ronnie Warren is to receive the salvage rights and title to that property which is located North of the right-of-way of Louisiana Highway 1046." From that judgment, Day took this suspensive appeal. The Warrens have not appealed that judgment or answered Day's appeal.

FACTS
The Warrens and Day are owners of contiguous tracts of land located in St. Helena Parish, Louisiana. The Day property is bounded on the north, east and south by the Warren property. The Day property and its boundaries are shown on the *1385 1984 Johnston survey, a copy of which is attached hereto as Appendix A.
The Warrens operate a dairy farm. An oxidation pond was constructed by the Warrens for use in their dairy operations. This pond is shown on the northeast part of the 1984 Johnston survey. The pond contains animal wastes, detergents and other chemicals used in the dairy operations. This pond has overflowed on several occasions and caused damage to Day's property.

INJUNCTION

(Assignment of Error 1)
Day contends the trial court committed error by not issuing an injunction to stop the overflowing of the oxidation pond onto her property.[4] The Warrens respond that a "lawful business cannot be abated as a nuisance unless it is operated in such ways as to give rise to serious and material discomfort and inconvenience to persons in close proximity thereto" and that Day has not proven that the Warrens have "gone outside the spectrum of generally accepted farming practices, therefore having no action against" them.[5]
The law applicable to this case is set forth in Rodrigue v. Copeland, 475 So.2d 1071, 1077-1078 (La.1985), as follows:
OBLIGATIONS OF NEIGHBORHOOD (C.C. arts. 667-669)
Owners of immovable property are restrained in the use of their property by certain obligations. These obligations include the responsibilities imposed by articles 667-669 of the Civil Code:
. . . .
These obligations of vicinage are legal servitudes imposed on the owner of property. These provisions embody a balancing of rights and obligations associated with the ownership of immovables. As a general rule, the landowner is free to exercise his rights of ownership in any manner he sees fit. He may even use his property in ways which "... occasion some inconvenience to his neighbor." However, his extensive rights do not allow him to do "real damage" to his neighbor.
. . . .
In determining whether an activity or work occasions real damage or mere inconvenience, a court is required to determine the reasonableness of the conduct in light of the circumstances. This analysis requires consideration of factors such as the character of the neighborhood, the degree of the intrusion and the effect of the activity on the health and safety of the neighbors.
In the past, this court has borrowed from the common law of nuisance in describing the type of conduct which violates the pronouncements embodied in C.C. 667-669. In Robichaux v. Huppenbauer, 258 La. 139, 150, 245 So.2d 385, 389 (1971), we considered whether a horse stable located in the City of New Orleans could be abated under C.C. 669. We stated the following test:

*1386 "Thus noxious smells, rats, flies and noise may constitute an actionable nuisance although produced and carried on by a lawful business, where they result in material injury to neighboring property or interfere with its comfortable use and enjoyment by persons of ordinary sensibilities. ... (Emphasis added).
. . . .
In Hero Lands Co. v. Texaco Inc., 310 So.2d 93, 98 (La.1975), we recognized that the prohibitions contained in C.C. 667-669 were not limited to the physical invasion of neighboring premises. According to the court:
"... The damage may well be intrinsic in nature, a combination of facts and conditions which, taken together, do not involve a physical invasion but which, under the circumstances, are nevertheless by their nature the very refinement of injury and damage." (Citations omitted).
Since plaintiffs seek injunctive relief, they must prove irreparable injury in addition to the necessary showing of real damage under C.C. 667-669. C.C.P. 3601; Salter v. B.W.S. Corp., Inc., 290 So.2d 821 (La.1974); Hilliard v. Shuff, 260 La. 384, 256 So.2d 127 (1972).
See also A. Yiannopoulos, 2 Louisiana Civil Law Treatise, Property § 229, pp. 610-616 (1980); F. Stone, 12 Louisiana Civil Law Treatise, Tort Doctrine § 220-239, pp. 294-313 (1977); A. Yiannopoulos, Civil Responsibility in the Framework of Vicinage: Articles 667-69 and 2315 of the Civil Code, 48 Tul.L.Rev. 195 (1974).
La. Const. of 1974, art. I, § 4 provides, in pertinent part, as follows:
Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power. (Emphasis added.)
La.C.C. art. 477 provides as follows:
Ownership is the right that confers on a person direct, immediate, and exclusive authority over a thing. The owner of a thing may use, enjoy, and dispose of it within the limits and under the conditions established by law. (Emphasis added.)
The overflow from the Warrens' oxidation pond is a direct physical invasion of Day's property.[6]See, for example, Ewell v. Petro Processors of Louisiana, Inc., 364 So.2d 604 (La.App. 1st Cir.1978), writ denied, 366 So.2d 575 (La.1979). The overflow from the Warrens' oxidation pond has irreparably injured and will irreparably injure Day's constitutional and statutory rights to control, use, enjoy and have exclusive authority over her property. Day is entitled to a permanent injunction to protect her property. Salter v. B.W.S. Corporation, Inc., 290 So.2d 821 (La.1974); Critney v. Goodyear Tire & Rubber Company, 353 So.2d 341 (La.App. 1st Cir.1977).
This assignment of error has merit.

TRANSFER OF OWNERSHIP OF DAMAGED PROPERTY FROM DAY TO THE WARRENS (SALVAGE)

(Assignment of Error 2)
Day contends the trial court committed error by ordering her to "transfer ownership of the property in question unto Rhoney Warren for the payment of the sum of $9,000.00." Day asserts this action by the trial court deprives her of her property *1387 without due process of law in violation of La. Const. of 1974, art. I, § 2.
The law applicable for determining the quantum of damages to property is set forth in Carter v. Gulf States Utilities Company, 454 So.2d 817, 819-820 (La.App. 1st Cir.1984), as follows:
In determining damages, the trier of fact is accorded much discretion, especially where the facts of the case preclude a precise computation of damages.... No mechanical rule of determining damages is to be applied; the quantum in each case must be determined considering the facts and circumstances of that case.... Although trial judges are granted great discretion in determining damage awards, these awards must be made in accordance with law.... The proper goal of a damage award is to restore the plaintiff, as closely as possible, to the position which he would have occupied had the accident never occurred....
Generally, three approaches have been followed by the Louisiana courts in arriving at the amount of damages to property; (1) the cost of restoration if the thing damaged can be adequately repaired; (2) the difference in value prior to and following the damage; or (3) the cost of replacement new, less reasonable depreciation, if the value before and after the damage cannot be reasonably determined, or if the cost of the repairs exceeds the value of the thing damaged.
Where an automobile has been totally destroyed, the proper measure of damages is the value of the vehicle, less the salvage value, if any. Coleman v. Victor, 326 So.2d 344 (La.1976); Brown v. Morgan, 449 So.2d 606 (La.App. 1st Cir.1984). However, where land has been rendered useless, the proper measure of damages is the lesser of either the market value of the property and severance damages minus any residual value[7] or the cost of restoration of the property to its condition prior to the damage. Mathene v. Terrebonne Parish Police Jury, 462 So.2d 274 (La.App. 1st Cir. 1984), writ denied, 463 So.2d 1321 (La. 1985). When land has been rendered useless, the cost of restoration exceeds the value of the land and no residual value has been proven, the owner of the damaged land is entitled to recover the market value of the land in damages. Mathene, 462 So.2d at 280-281; Ewell, 364 So.2d at 608-609.
We have found no authority, and none has been cited to us, which would authorize a court to order the transfer of the ownership of property to a tort-feasor where the tort-feasor has paid the victim the full value of the property damaged. Payment for damages for a tort is not equivalent to paying for the value of a thing in a sale. Ownership of property can only be acquired by inheritance, the effect of an obligation[8] or by operation of law (such as expropriation). La.C.C. art. 870. La. Const. of 1974, art. I, § 4 provides, in pertinent part, as follows:
Property shall not be taken or damaged by any private entity authorized by law to expropriate, except for a public and necessary purpose and with just compensation paid to the owner; in such proceedings, whether the purpose is public and necessary shall be a judicial question.
There has been no showing herein that the Warrens are authorized by law, inheritance or obligation to acquire ownership of Day's property. If a tort-feasor were allowed to acquire ownership of property he damaged merely by paying the damage, we can envision situations where it would be in the interest of the tort-feasor to do so, thus, encouraging the tort-feasor to commit the tort. However, this would deprive the owner of his property without due process and would encourage a social policy that *1388 rewarded a tort-feasor. We will not condone such a policy.
This assignment of error has merit.

DECREE
For the foregoing reasons, the judgments of the trial court in Day's nuisance suit, which denied a permanent injunction to Day and ordered Day to transfer ownership of a portion of her property to the Warrens, are reversed. Day's nuisance suit is remanded to the trial court for the issuance of a permanent injunction in favor of Day against the Warrens upon such terms and conditions as will effectively protect Day's rights to control, use and enjoy her property. The Warrens are cast for the cost of this appeal.
REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART.
*1389 
NOTES
[1] Mr. Warren's first name is also spelled as "Ronnie".
[2] There has been no appeal taken from this judgment.
[3] In his reasons for judgment, the trial judge indicated 9 acres were involved.
[4] The trial court judgment and reasons for judgment are silent on the injunction issue. Silence in a judgment as to any part of a demand made in a litigation is construed as a rejection of that part of the claim. Hendrix v. Hendrix, 457 So. 2d 815 (La.App. 1st Cir.1984).
[5] The Warrens also assert the following argument:

Louisiana Revised Statutes Article 3:3603 provides that no farm shall be a nuisance under Civil Code Article 669, or any other authority, if the farmer is following generally accepted agricultural practices. Article 3:3604 states there is a presumption that a farmer is following generally accepted farming practices unless proven otherwise. Appellant has not overcome this burden. Mr. Wascom, a dairy specialist for over 30 years stated that Mr. Warren was in full compliance with all generally accepted dairy practices. There was further testimony by surrounding dairy farmers that Appellee was an exceptional dairy farmer.
In his reasons for judgment, the trial court judge held, as a matter of law, that the referenced presumption was rebuttable and held, as a matter of fact, that the evidence presented overcame the presumption. The Warrens have not appealed or answered the appeal and cannot now contest these rulings on appeal. La.C.C.P. art. 2133; Brewington v. Louisiana Department of Corrections, 447 So.2d 1184 (La.App. 3rd Cir.), writ denied, 449 So.2d 1348 (La.1984).
[6] Mrs. Day does not contend on appeal that the oxidation pond is located on her property. However, a review of the 1984 Johnston survey indicates the boundary between the Warrens and Mrs. Day runs through the pond. Trespass is a tort actionable under La.C.C. art. 2315 and is defined as the unlawful physical invasion of the property or possession of another. LaRue v. Crown Zellerbach Corporation, 512 So.2d 862 (La.App. 1st Cir.), writ denied, 514 So.2d 1176 (La. 1987). The placement of the oxidation pond partially on Day's property without lawful authority is a trespass. It is also arguable that the overflow from the pond onto Day's property was a trespass. Where a trespass is sought to be enjoined, there need not be a showing of damage or irreparable injury. La.C.C.P. art. 3663; Whitney National Bank of New Orleans v. Poydras Center Associates, 468 So.2d 1246 (La.App. 4th Cir.1985); Adcock v. Marshall Exploration, Inc., 434 So.2d 471 (La.App. 2nd Cir.1983); Ryan v. Pekinto, 387 So.2d 1325 (La.App. 1st Cir.), writ denied, 394 So.2d 615 (La.1980).
[7] Thus, the salvage value of immovable property is its residual value after the damage.
[8] A person legally liable for damages (such as a collision or liability insurer) can enter into a conventional obligation with the owner of damaged property wherein the ownership of the damaged property is transferred to the person legally liable in exchange for payment of the total value of the property. In this way, the person legally liable will obtain ownership of the "salvage."