598 So.2d 438 (1992)
David E. BARR, Plaintiff-Appellant,
v.
Bobby SMITH, Defendant-Appellee.
No. 23471-CA.
Court of Appeal of Louisiana, Second Circuit.
April 8, 1992.
Rehearing Denied May 7, 1992.
*439 Levy & Shealy by Robert W. Levy, Ruston, for plaintiff-appellant.
Bobby L. Culpepper, Jonesboro, for defendant-appellee.
Before MARVIN, SEXTON and HIGHTOWER, JJ.
SEXTON, Judge.
The plaintiff, David E. Barr, appeals a trial court judgment in favor of the defendant, Bobby Smith, rejecting plaintiff's demands for damages and for the restoration of his damaged property. We reverse and remand with instructions.
In April 1988, the plaintiff discovered that excavation work had been performed on defendant's property[1] immediately adjacent to plaintiff's property. The naturally hilly terrain on defendant's property had been leveled at defendant's direction in preparation for the construction of commercial chicken houses. At its closest, the excavation came within three feet of plaintiff's property and left variable differences in elevation between the two properties of from two to seventeen feet. In time, as the result of erosion attributable to the leveling work performed at defendant's direction, several trees, a survey marker, and a considerable amount of dirt fell from the plaintiff's property onto defendant's property.
On October 26, 1989, the plaintiff filed suit against the defendant seeking property damages, plus damages for inconvenience, *440 emotional distress, and the interruption of enjoyment of his property. Additionally, plaintiff sought an order directing defendant to remedy the problem by replacing the lateral support of plaintiff's property, either in the form of dirt or by the construction of a retaining wall. Following a bench trial, the trial court issued reasons for judgment in which it found that defendant had performed the excavation work which resulted in elevation differences between the two properties of from two to seventeen feet. Nevertheless, the trial court found that plaintiff did not prove his demands and judgment was therefore rendered on April 25, 1991, in favor of defendant dismissing plaintiff's demands. Plaintiff appeals this judgment.
At the outset, we consider two threshold issues raised by defendant in his appellate brief. Defendant argues that plaintiff's claims had prescribed and that defendant was not the owner of the property at issue.[2] The prescriptive period for an action under LSA-C.C. Art. 667 for damages caused to neighboring property is one year. Dean v. Hercules, Incorporated, 328 So.2d 69 (La. 1976); Dwyer v. Smith, 546 So.2d 895 (La.App. 1st Cir.1989). Prescription commences to run from the date damages were sustained or from the date the owner of the damaged property acquired, or should have acquired, knowledge of the damage. LSA-C.C. Arts. 3492, 3493.
In the instant case, although the excavation work was apparently performed in April 1988, there was no damage sustained at that time. Plaintiff testified that he first noticed that the erosion had caused damage to his property in July 1989. Although plaintiff sent a letter to defendant dated August 19, 1988, complaining of the excavation work, that letter clearly stated plaintiff's concerns were merely of "potential damage" to his property. In the absence of any evidence that damages were sustained prior to July 1989, prescription commenced to run from that time. The suit was therefore timely filed on October 26, 1989, and defendant's exception of prescription was properly overruled.
Defendant further argues that he did not own the property where the excavation was performed. Although defendant initially testified that he did own the property, he later stated that the property was owned by Smith Timber Company. Plaintiff's acquiescence in the conclusion that the company owned the property would appear reinforced by the fourth amending and supplemental petition filed by plaintiff, with the consent of both the defendant and Smith Timber Company, which purports to join Smith Timber Company as a defendant in this lawsuit.
However, that amending petition was filed on February 5, 1992, after the trial court had rendered judgment and while the case was pending on appeal. The trial court was without authority to allow an amendment of the petition after the rendition of a final judgment. Loupe v. Circle, Inc., 545 So.2d 694 (La.App. 5th Cir.1989); Booth v. Allstate Insurance Company, 466 So.2d 703 (La.App. 4th Cir. 1985); Templet v. Johns, 417 So.2d 433 (La.App. 1st Cir. 1982), writ denied, 420 So.2d 981 (La.1982). Moreover, while the matter was pending on appeal, the trial court was divested of jurisdiction. LSA-C.C.P. Art. 2088; Money Shack, Inc. v. Martin, 512 So.2d 576 (La.App. 3rd Cir. 1987), writ denied, 519 So.2d 113 (La.1988). The trial court erroneously granted plaintiff leave to file the fourth amending and supplemental petition and we are unable to give credence to its contents on appeal.
Nevertheless, whether the defendant individually or Smith Timber Company is the actual owner of the property at issue is immaterial. Liability under LSA-C.C. Art. 667 is not limited to owners of the property. The jurisprudence has broadly *441 interpreted the term "proprietor" under Art. 667[3] to encompass lessees, agents, contractors, etc. See Butler v. Baber, 529 So.2d 374 (La.1988), and citations therein.
In the instant case, the defendant clearly admitted responsibility for the excavation in that it was done at his direction. Accordingly, the defendant was functioning either individually as the owner of the property or as an agent for Smith Timber Company. In either case, the defendant would constitute a "proprietor" under LSA-C.C. Art. 667. Contrary to defendant's argument, it is of no consequence to this case that defendant individually may not own the property.
We now turn to the merits of plaintiff's appeal. The trial court found plaintiff failed to prove his demands, that defendant's actions injured his property. We find that this factual conclusion is clearly wrong. The evidence plainly shows damage to plaintiff's property, that trees, a survey marker, and a significant amount of dirt, or soil, eroded away. There is no other reasonable conclusion but that this erosion was a natural, direct consequence of the excavation performed on defendant's property, which resulted in a difference of elevation of up to 17 feet between the two properties. The defendant admitted that the excavation was performed at his direction and that the excavation ultimately damaged plaintiff's property. Defendant's trial defense focused solely on the extent of that damage. Clearly, plaintiff has proven his property was physically damaged.
As an item of special damages, plaintiff seeks $730 for two surveys which he ordered to assess the extent of the erosion damage. These fees are necessary and reasonable. Plaintiff is entitled to this sum. Cf. Cell-O-Mar, Inc. v. Gros, 479 So.2d 386 (La.App. 1st Cir.1985), writs denied, 481 So.2d 1332, 1333 (La. 1986).
Plaintiff also claims damages for mental anguish. LSA-C.C. 667 can be said to impose strict liability. Butler v. Baber, supra; King v. Western Club, Inc., 587 So.2d 122 (La.App. 2d Cir.1991), and cites therein at 124. Damages for mental anguish are an appropriate item of damages in a case of strict liability. Elston v. Valley Electric Membership Corporation, 381 So.2d 554 (La.App. 2d Cir.1980); Farr v. Johnson, 308 So.2d 884 (La.App. 2d Cir. 1975), writ not considered, 310 So.2d 854, 315 So.2d 143 (La.1975). Thus, plaintiff is entitled to an award of damages for mental anguish.
In this respect, we note that the record reflects that plaintiff's ancestors homesteaded the property after the Civil War around 1868, and the property has been in the family ever since. Plaintiff was considering selling his home in Rayville and moving his residence to this property. Plaintiff's children are afraid to bring plaintiff's grandchildren to the property because of the significant drop-off. It is obvious from the photographs that plaintiff is unable to fence his property line as the property now exists. Because we have determined to remand, as we will discuss infra, we will leave the assessment of these damages to the trial court on remand.
We now come to the premier and most difficult issue in the case, the appropriate remedy. Plaintiff's central theme in the trial court in this respect was to seek an order directing the defendant to remedy the erosion problem by replacing the lateral support to his property either by refilling the dirt or constructing a retaining wall.
Defendant asserted below that the appropriate remedy was the assessment of monetary damages. The only evidence at the trial regarding such damages came from the defendant and his expert real estate appraiser, Robert B. Greer. Mr. Greer assessed a market value of $6,800 for the entirety of plaintiff's ten-acre tract. Mr. Greer further assessed a market value of *442 $537.03 for the damaged 50-foot tract of plaintiff's land contiguous to the defendant's excavated land.[4] The defendant testified as to his inquiries into the feasibility of restoring plaintiff's property to its condition prior to the erosion. The defendant estimated that it would cost between $18,000 and $20,000 to erect a concrete retaining wall which would prohibit further erosion.
In short, while the plaintiff indeed sought certain minor items of monetary damage in the trial court, the major thrust of plaintiff's case was toward obtaining an order directing the defendant to restore plaintiff's property to the condition in which it existed prior to the excavations which defendant undertook. On the other hand, the major thrust of the defendant's position in the trial court was the contention that only the boundary to plaintiff's property was affected and even with further erosion a significant portion of plaintiff's property would not be affected. Thus, defendant asserted plaintiff could be adequately compensated by the payment of a nominal sum of money.
Generally speaking, when property is damaged by the fault of another, the primary objective is to restore the property as nearly as possible to the state it was in immediately preceding the accident. Coleman v. Victor, 326 So.2d 344 (La. 1976); Foster v. Craig Equipment Company, 550 So.2d 818 (La.App. 2d Cir.1989). Where land has been rendered useless, the proper measure of damages is the lesser of either the market value of the property and severance damages minus any residual value or the cost of restoration of the property to its condition prior to the damage. Day v. Warren, 524 So.2d 1383 (La.App. 1st Cir.1988); Matherne v. Terrebonne Parish Police Jury, 462 So.2d 274 (La.App. 1st Cir.1984), writs denied, 463 So.2d 1321 (La.1985). When land has been rendered useless, the cost of restoration exceeds the value of the land and no residual value has been proven, the owner of the damaged land is entitled to recover the market value of the land as his damages. Day v. Warren, supra; Matherne v. Terrebonne Parish Police Jury, supra.
We have been struck by the fact that the defendant suggested to the trial court, and has suggested to us, that he has offered to buy the damaged subject property up to a buffer zone of 50 feet, which he contends should satisfy the plaintiff.
At least one case, Day v. Warren, supra, has, on constitutional and codal grounds, emphatically rejected the notion that one may damage the property of his neighbor and then make him whole by purchasing the damaged property. The Day court concluded that such a result offends the first paragraph of the LSA-Const. Art. 1, § 4, which states:
Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power.
The court further concluded the concept offends LSA-C.C. Art. 477, which provides:
Ownership is the right that confers on a person direct, immediate, and exclusive authority over a thing. The owner of a thing may use, enjoy, and dispose of it within the limits and under the conditions established by law.
While not specifically so asserting, the Day court opinion strongly implies that where real property is damaged, only a restoration is constitutionally appropriate.
Contrarily, there is jurisprudence holding that if repair or return to the status quo is monetarily prohibitive and the risk of future injury to the plaintiff is limited, an award of damages may be the appropriate remedy. Young v. International Paper Company, 179 La. 803, 155 So. 231 (1934) (injunction denied where risk of future injury to plaintiff's property minimal and injunction would virtually shut down defendant's mills, costing millions of dollars); *443 Moreland v. Acadian Mobile Homes Park, Inc., 313 So.2d 877 (La.App. 2d Cir.1975), writs denied, 319 So.2d 442, 443 (La.1975) (injunction denied where it would "paralyze" sewage disposal for 80 to 90 persons and there was no evidence of a health hazard to plaintiff). But see Poole v. Guste, 261 La. 1110, 262 So.2d 339 (1972) (noting that relegating a landowner to monetary damages rather than an injunction has been limited to "very exceptional circumstances").
While the photographic evidence shows a dramatic 17-foot eroding cliff at the center of defendant's excavation, it does not appear that restoration would be overly burdensome. Such is, however, uncertain on this record. Thus, on the other hand, it is possible that restoration may be overly burdensome.
Under the circumstances, we thus conclude that a remand, which we recognize should be used sparingly, is appropriate to render a just decision and prevent a miscarriage of justice. Winn State Bank & Trust Company v. Browning, 453 So.2d 286 (La.App. 2d Cir.1984).
We are obviously influenced in this choice by the strong implication in Day v. Warren, supra, that to allow a defendant to simply pay for the extent of a neighbor's property which has been damaged may establish a poor precedent. Such a result would allow a property owner to do as he will with his property in order to reap major economic benefit, since any damage to neighboring property can be remedied by the payment of a sum that is relatively nominal when the gain involved is considered.
In summary, while we are concerned by the parallel between the instant circumstances and those of Day v. Warren, supra, it appears that the instant violation may be susceptible of being remedied relatively inexpensively. Because we cannot be certain from this record, we are remanding primarily for the trial court to determine the simplest remedy and order that the defendant accomplish same if it is reasonable within the context of the case. Should the trial court so determine, the court should also render judgment for the plaintiff in the amount of the two surveys, $730, and for a sum representing damages for mental anguish for the period from the initial act of damage until the remedy.
Should the trial court determine that there is no reasonable method of repair, the court should again render damages for the plaintiff in the amount of the surveys, $730, as well as more extensive mental anguish damages (representing the continuing nature of the defendant's encroachment), and for the value of the land harmed or reasonably expected to be harmed by virtue of continuing erosion.
In this respect, we recognize, but do not decide at this point that this latter remedy may be constitutionally inadequate. It is, however, unnecessary to decide that issue at this time. It can await another day.
Costs of this appeal are assessed to the defendant.
REVERSED AND REMANDED WITH INSTRUCTIONS.

APPLICATION FOR REHEARING
Before MARVIN, SEXTON, LINDSAY, HIGHTOWER and STEWART, JJ.
Rehearing denied.
NOTES
[1] As discussed more fully infra, there is some dispute as to whether defendant or Smith Timber Company actually owns this property. Nevertheless, for ease of discussion, we will refer to it as defendant's property.
[2] These issues may properly be considered on appeal even though defendant has neither appealed nor answered plaintiff's appeal, as defendant does not seek to have the judgment modified, revised or reversed, but merely affirmed for alternate reasons. LSA-C.C.P. Art. 2133; Clark v. McDonald's System, Inc., 383 So.2d 61 (La.App. 2d Cir.1980), writ denied, 386 So.2d 95 (La.1980); Pernia v. Trail, 519 So.2d 231 (La. App. 5th Cir. 1988), writ denied, 520 So.2d 755 (La.1988).
[3] LSA-C.C. Art. 667 provides:

Art. 667. Limitations on use of property
Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him.
[4] Mr. Greer termed this 50-foot tract a "buffer zone," encompassing not only the portion of plaintiff's land already damaged, but also extending to the limits of any possible future erosion.