671 So.2d 1186 (1996)
Johnnie Carolyn Maza BARRETT, et al., Plaintiff-Appellant,
v.
T.L. JAMES & COMPANY, Defendant-Appellee.
No. 28,170-CA.
Court of Appeal of Louisiana, Second Circuit.
April 3, 1996.
Writ Denied June 7, 1996.
*1188 Bobby L. Culpepper, Jonesboro, for Appellant.
William S. Carter, Jr., Ruston, for Appellee T.L. James & Co.
Patrick J. Hanna, Lafayette, for Appellee Con-Trux Construction.
William G. Kelly, Jr., Monroe, for Appellee Boyte Enterprises, Inc.
Before MARVIN, HIGHTOWER and GASKINS, JJ.
GASKINS, Judge.
The plaintiffs appeal from a trial court judgment denying their claim that the defendant construction company created a nuisance. The plaintiffs allege that the construction company's concrete recycling operation, conducted several hundred feet from the plaintiffs' residences, was extremely noisy and created a large amount of dust that damaged their homes. The plaintiffs also allege that they suffered respiratory illnesses as a result of the concrete dust. The trial court found that the plaintiffs failed to prove that the construction company's activities constituted a nuisance and denied their claims for damages. We affirm the trial court judgment.

FACTS
The plaintiffs are Johnnie Carolyn Maza Barrett[1] her daughter and son-in-law, Tammie and Richard Burton and Mrs. Barrett's mother, Lois Maza. Mrs. Barrett, now Mrs. Clark, the Burtons and Mrs. Maza each live in mobile homes located in close proximity to each other on Lincoln Parish Road 46. This is a dirt road approximately one-fourth of a mile from 1-20. The plaintiffs are the only *1189 residents on this portion of the parish road. Their closest neighbors are approximately one mile away across 1-20.
The defendant is the T.L. James Construction Company (T.L. James). Third party defendants are Con-Trux Construction Company, Inc., a business which operated a concrete crusher and Boyte Enterprises, Inc., which provided trucks for T.L. James. In early 1991, T.L. James began resurfacing work on a seven mile stretch of 1-20, near the plaintiffs' homes. Work was completed in October, 1992. The project involved removing the existing concrete on the interstate, recycling it and reconstructing the highway. In March, 1991, T.L. James leased several acres of land directly across the parish road from the plaintiffs. The property was used to set up a concrete recycling operation and a concrete plant. This location is near an interchange on the interstate, providing accessibility from the east and west bound lanes of the highway. The location was also about midway in the seven mile area being reconstructed by T.L. James.
The property was sparsely covered with trees. Some trees were cleared from the property and dirt and bulldozers were brought in to level the area. A barrier of approximately three acres of trees was left on the property. Behind this tree barrier, T.L. James set up its concrete plant. The plant was approximately nine hundred feet from the plaintiffs' residences. In 1991, the defendant began producing concrete at this plant for use in the highway project. The plant was used to produce concrete from September 19, 1991 until November 22, 1991 and from June 5, 1992 until August 4, 1992. Access to the concrete production plant was gained from a separate entrance to the site. Trucks hauling concrete mix to 1-20 did not usually pass the plaintiffs' residences.
In early 1992, trucks operated by Boyte Enterprises began hauling concrete removed from 1-20 to the site where it was stockpiled. These trucks used Parish Road 46, in front of the plaintiffs' residence to access the stock pile site. In March, 1992, Con-Trux brought in a portable concrete crusher to recycle these concrete pieces. The concrete crusher was situated about two hundred feet from the plaintiffs' residences. The machine was placed behind a pile of concrete pieces in order to lessen the noise from the operation. The plaintiffs objected to the dust and noise caused by the concrete recycling operation. They claimed that the noise was disruptive and that the dust from the recycling operation and the trucks hauling concrete pieces into the site damaged the carpet and curtains in their houses. The plaintiffs also claimed that the dust aggravated their respiratory problems. The concrete recycling operation ended in October, 1992.
On July 7, 1992, the plaintiffs filed suit against T.L. James Company, alleging that the construction company's activities created a nuisance and seeking damages. T.L. James filed third party demands against Con-Trux and Boyte Enterprises. The matter was heard in the trial court in November, 1994.
On March 29, 1995, the trial court issued reasons for judgment. T.L. James released its third party claims against Con-Trux and Boyte Enterprises. The trial court found in favor of T.L. James Company and rejected the claims of the plaintiffs. The court found that, while the activities of the defendant may have caused some inconvenience to the plaintiffs, it did not constitute a nuisance and the plaintiffs were not entitled to damages.
The trial court noted that the plaintiffs were seeking damages for personal injury, namely upper respiratory problems caused by dust. They also sought property damages caused by the accumulation of dust in their homes. Additionally, Mrs. Clark sought rental reimbursement for apartment rent when she left her home and moved to Monroe for several months. The trial court found that plaintiffs failed to produce any medical testimony to corroborate their claims of respiratory problems. According to the court, the medical experts failed to confirm any causal connection between any illness of the plaintiffs or their family members and the construction project. Regarding property damage, the court cited testimony showing that Mrs. Clark's carpet was of sufficient age that it was in need of replacement. The court also found that there was no indication that the dust could not have been removed *1190 through regular vacuuming and cleaning. The court found that there was no proof or testimony of any other damage to the mobile homes or the automobiles. The trial court was also unconvinced that Mrs. Clark was entitled to rental reimbursement. The court found that she moved to an apartment in West Monroe to live with Mr. Clark, whom she later married, and that she would have made this move regardless of the problems with the construction project.
The trial court found that the plaintiffs were inconvenienced by the construction project, but that the project was necessary and extremely important to the welfare of the community. The court found that the inconvenience was not unusual or extraordinary, considering the length of the project and the measures taken to minimize the problems. On May 12, 1995, the trial court filed its judgment in favor of T.L. James Company and the third party defendants, rejecting the claims of the plaintiffs. The plaintiffs appealed.

NUISANCE
The plaintiffs argue that the trial court erred in failing to find that the actions of T.L. James constituted a nuisance. The plaintiffs contend that the evidence shows that they had to endure excessive dust and noise from March 1991 until October, 1992. They assert that the trial court was manifestly erroneous in failing to find that the defendant's actions constituted a nuisance and that the plaintiffs are entitled to property and personal injury damages as well as recovery for mental anguish. This argument is without merit.

Legal Principles
La.C.C. Art. 667 provides:
Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty to enjoying his own, or which may be the cause of damage to him.
La.C.C. Art. 668 provides:
Although one be not at liberty to make any work by which his neighbor's buildings may be damaged, yet every one has the liberty of doing on his own ground whatsoever he pleases, although it should occasion some inconvenience to his neighbor.
Thus he who is not subject to any servitude originating from a particular agreement in that respect, may raise his house as high as he pleases, although by such elevation he should darken the lights of his neighbors's [neighbor's] house, because this act occasions only an inconvenience, but not a real damage.
La.C.C. Art. 669 provides:
If the works or materials for any manufactory or other operation, cause an inconvenience to those in the same or neighboring houses, by diffusing smoke or nauseous smell, and there be no servitude established by which they are regulated, their sufferance must be determined by the rules of the police, or the customs of the place.
The obligations of vicinage contained in these articles are legal servitudes imposed on the owner of property. These provisions embody a balancing of rights and obligations associated with the ownership of immovables. As a general rule, the landowner is free to exercise his rights of ownership in any manner he sees fit. He may even use his property in ways which occasion some inconvenience to his neighbor. However, his extensive rights do not allow him to do real damage to his neighbor. Rodrigue v. Copeland, 475 So.2d 1071 (La.1985); Barras v. Hebert, 602 So.2d 186 (La.App. 3d Cir.1992), writ denied 605 So.2d 1367 (La.1992).
La.C.C. Arts. 667-669 place limitations on the rights of owners by setting out principles of responsibility which require an owner to use his property in such a manner as not to injure another. La.C.C. Art. 667 prohibits uses which cause damage to neighbors or deprive them of the enjoyment of their property, while La.C.C. Art. 668 permits uses which merely cause neighbors some inconvenience. La.C.C. Art. 669 allows suppression of certain inconveniences if excessive under local ordinances or customs, and requires tolerance of lesser inconveniences. Together the three article establish the following principles: No one may use his *1191 property so as to cause damage to another or to interfere substantially with the enjoyment of another's property. Landowners must necessarily be exposed to some inconveniences arising from the normal exercise of the right of ownership by a neighbor. Excessive inconveniences caused by the emission of industrial smoke, odors, noise, dust vapors, and the like need not be tolerated in the absence of a conventional servitude; whether an inconvenience is excessive or not is to be determined in the light of local ordinances and customs. Inabnet v. Exxon Corporation, 93-0681 (La. 9/6/94), 642 So.2d 1243; Critney v. Goodyear Tire and Rubber Company, 353 So.2d 341 (La.App. 1st Cir. 1977).
We sometimes use the word nuisance in describing the type of conduct which violates the pronouncements embodied in La. C.C. Arts. 667-669. Barras v. Hebert, supra. While the owners of property are not required to suffer damage as a result of the works undertaken on their neighbor's property, the law has decreed that certain inconveniences must be tolerated. The extent of the inconvenience the property owner must tolerate without redress depends upon the circumstances. When the actions or work cease to be inconveniences and become damaging is a question of fact. King v. Western Club, Inc., 587 So.2d 122 (La.App.2d Cir. 1991); Hobson v. Walker, 41 So.2d 789 (La. App.2d Cir.1949). The fact finder's decision in a nuisance case cannot be overturned in the absence of manifest error. Barras v. Hebert, supra. The determination is based upon the nature of the intrusion into the neighbor's property, plus the extent or degree of the damage. Hero Lands Co. v. Texaco, Inc., 310 So.2d 93 (La.1975).
In determining whether an activity or work occasions real damage or mere inconvenience, a court is required to determine the reasonableness of the conduct in light of the circumstances. This analysis requires consideration of factors such as the character of the neighborhood, the degree of intrusion and the effect of the activity on the health and safety of the neighbors. Rodrigue v. Copeland, supra; Day v. Warren, 524 So.2d 1383 (La.App. 1st Cir.1988).
While noise and dust do not necessarily constitute a nuisance, in some instances they may be so, depending upon the particular circumstances. Hobson v. Walker, supra; King v. Western Club, Inc., supra; Codding v. Braswell Supply, 54 So.2d 852 (La.App.2d Cir.1951); Day v. Warren, supra.

Discussion
Mrs. Clark testified in support of her claim that the defendant's activities constituted a nuisance. She stated that the concrete recycling project began in early 1992, creating excessive noise and dust. She testified that the work was carried on as early as 6 a.m. and as late as 9 or 10 p.m. The work was conducted six days a week. However, Mrs. Clark was employed in Monroe and left her home each morning at about 7:30 a.m. and returned at 5:45 p.m.
Mrs. Clark testified that the dust from this operation covered everything inside her house and also got into the family's automobiles.[2] She testified that no amount of cleaning would eliminate the dirt from her mobile home. After the conclusion of the project, she had the carpet replaced in her mobile home as well as some of the insulation. She alleged that the dust had gotten into the insulation in the walls of her mobile home. She also testified that the noise from the operation was so loud that she often could not hear callers on the telephone and she could not carry on normal conversations inside her house. She stated that she could not watch television while the operation was going on. Mrs. Clark testified that the operation was particularly disruptive while her husband, Mr. Barrett, was in his final illness from January to March, 1992. She stated that the dust aggravated her chronic asthma. Mrs. Clark testified that in June, 1992, the noise and dust became so bad that she moved into an apartment in West Monroe.
*1192 Tammie Burton testified that she lives with her husband and three children in a mobile home close to her mother. Mrs. Burton stated that the dust and noise from the construction project was disruptive to her household. She stated that the dust infiltrated her mobile home. She testified that in March, 1992, she brought her newborn son home from the hospital. The child had respiratory problems and she installed a separate window air conditioning unit in a bedroom for the baby and cleaned the room daily. She stated that she could no longer hang clothes out to dry because they would become covered with dust. Mrs. Burton testified that when the trucks dumped loads of concrete chunks, the noise would jar the windows in her house. She also stated that she had trouble hearing callers on the telephone. Mrs. Burton was not employed outside the home.[3]
Prentiss Don Young, site manager for T.L. James, testified that he talked with Mrs. Clark and Mrs. Burton regarding the dust and noise from the construction site. He told them that T.L. James would use water trucks to wet down the road in front of the residences frequently in an effort to keep the dust from the road down. He also stated that his company offered to construct a privacy fence in front of the residences to cut down on the noise. The company offered to wash the plaintiffs' vehicles on site or set up an account to have the cars washed weekly. He stated that the plaintiffs declined these offers. He testified that a 5 mph speed limit was posted on the road in front of the plaintiffs' residences and that the concrete crusher was moved away from the road and placed behind a large pile of concrete in order to lessen the noise. Mr. Young also testified that he gave his business card to the plaintiffs and asked them to contact him with any complaints they had about the operation. He stated that the plaintiffs never called him. According to Mr. Young, work began at the site at 7 a.m. and ended at around 5:30 p.m. each work day. The operation ended in October or November, 1992.
Vernon J. Sharp testified on behalf of Con-Trux. He stated that on March 19, 1992, Con-Trux began its recycling operation. Concrete was crushed on nine days in March, 1992, on fifteen days in April, 1992, and on three days in May, 1992. During this time, the crushing operation was conducted on four Saturdays and for two hours on one Sunday. On May 4, 1992, the concrete crusher was dismantled and removed from the site. It was taken to another site in Start, Louisiana. On July 21, 1992, the concrete crusher was returned to the site across the road from the plaintiffs. Concrete was crushed on the site on seven days in July, 1992, sixteen days in August, 1992, seventeen days in September, 1992 and on three days in October, 1992. During this time, concrete was crushed on the site on six Saturdays and no Sundays.
Dr. L.D. Boersma testified by deposition regarding his treatment of Mrs. Clark and of Mrs. Burton and her three children. Dr. Boersma testified that he treated Ms. Burton and her children for respiratory infections as well as other unrelated ailments. He stated that most of their ailments were caused by infections rather than by environmental factors, such as dust. He also treated Mrs. Clark for a variety of ailments, including asthma. Dr. Boersma stated that he was never told that the family was living close to a dusty construction site.
Dr. Bruce W. Everist, a pediatrician, testified by deposition regarding his treatment of Mrs. Burton's children. He stated that they had been treated for a variety of illnesses, including respiratory ailments, but that Mrs. Burton never "lodged any complaints" that she attributed to construction activities. When asked whether excessive dust from construction activities could cause the illnesses for which he treated the children, Dr. Everist stated that it might aggravate the problems, but it would not cause them. Dr. Everist also stated that he did not treat any of the children from March to November, 1992.
*1193 Jimmy Joe Warren, of J & W Carpets, testified that he replaced the carpeting in Mrs. Clark's mobile home in April, 1993. He testified that the carpet which was replaced did not have significant damage, other than ordinary wear and tear. He also testified that the normal life expectancy of carpet in a mobile home is five to six years. Mrs. Clark's mobile home was approximately six years old at the time the carpet was replaced.
Based upon our review of the record, including the testimony, depositions, and the video tapes filed into evidence by the parties, we find that the trial court did not err in finding that the activities of the defendant in this case did not constitute a nuisance. The concrete crushing operation was conducted in a rural area in which the plaintiffs were the only residents. The operation was not continuous from March 1992 to October, 1992. During May to July, 1992, the concrete crushing machine was not even located on the site in question. When the machine was on site, crushing operations never occurred more than seventeen days in one month. The operation was not conducted every day nor was it carried out late into the night or commenced in the early morning hours.
Further, the plaintiffs have failed to demonstrate that the dust and noise caused harm to their property or to their health. Mrs. Clark replaced her carpet and some of the insulation in her mobile home prior to trial. No samples or photographs of the carpet or insulation taken from the mobile home were admitted into evidence. The record also shows that Mrs. Clark's carpet was approximately six years old and was due for routine replacement. Also, there is no evidence of damage to the draperies in Mrs. Clark's home.
The record is devoid of evidence of damage to the interior of Mrs. Burton's home. In addition, the depositions of the plaintiffs' physicians fails to support their claims that the dust from the construction site aggravated their respiratory conditions.
The videotape introduced into evidence by the plaintiffs shows the level of dust and noise generated by the operation. The noise level in the plaintiffs' residences is such that a normal conversation can be conducted. Further, the video did not show an inordinate amount of dust in the plaintiffs' residences. These factors, coupled with the medical depositions, which show that the plaintiffs did not suffer any aggravation of their respiratory problems caused by dust during this operation, and made no complaint to their physicians regarding dust, causes us to conclude that the trial court was not manifestly erroneous in denying the plaintiffs' claims.
Given the character of the neighborhood, the degree of intrusion and the effect on the health and safety of the plaintiffs, we find that the trial court did not err in finding that the activities of the defendant in this case constituted only an inconvenience and not a nuisance to the plaintiffs. Accordingly, the trial court was correct in denying the plaintiffs' claims for damages.

EXPERT WITNESS
The plaintiffs argue that the trial court erred in allowing a witness on behalf of the defendant to testify as an expert. At trial, the defendant offered the testimony of Douglas Murl Harville, a property adjuster for Crawford and Company Risk Management. Mr. Harville's duties included inspection of damaged property, including mobile homes, determination of the cause of the damage and estimation of the cost of repair or replacement. Mr. Harville was tendered as an expert in the field of determining the cause of damages to mobile homes and the estimation of the repair of such damages. The trial court accepted Mr. Harville as an expert in this field, over the plaintiffs' objection that there is no such field of expertise. On appeal, the plaintiffs continue to assert that there is no such field of qualification and that the trial court erred in allowing the witness to testify as an expert. This argument is without merit.
La.C.E. Art. 702 provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, *1194 training, or education, may testify thereto in the form of an opinion or otherwise.
An expert is one who, usually by education or experience, has a unique knowledge of the subject matter at issue and he or she is permitted to express personal opinions. Blitz v. Jefferson Parish Hospital Service District No. 2, 93-733 (La.App. 5th Cir. 4/14/94), 636 So.2d 1059. The trial court is vested with broad, albeit not unfettered, discretion in determining whether a witness qualifies to testify as an expert in his field. La.C.E. Art. 702 comment (d); Southern Message Service, Inc. v. Commercial Union Insurance Company, 26, 311 (La.App. 2d Cir. 12/7/94), 647 So.2d 398, writ denied 95-0059 (La. 3/10/95), 650 So.2d 1180; State v. Mays, 612 So.2d 1040 (La.App. 2d Cir.1993), writ denied 619 So.2d 576 (La.1993); State v. Brossette, 93-1036 (La.App. 3d Cir. 3/2/94), 634 So.2d 1309, writ denied 94-0802 (La. 6/24/94), 640 So.2d 1344. To determine whether a witness is an expert, the court is guided by two primary concerns: whether the witness plans to testify to actual technical knowledge and whether such knowledge will assist the trier of fact in understanding or determining a fact in issue. Southern Message Service Inc. v. Commercial Union Insurance Company, supra.
Mr. Harville testified that he had formal training in determining the cost of property damage to mobile homes and the cost of repair or replacement of such damage. He had completed a basic property course offered by Crawford and Company as well as an intermediate course and a continuing education course on mobile homes. He also testified that he had formal training regarding different types of construction of mobile homes, and had training in determining the cause of damage and the cost of repair. He had adjusted property claims on mobile homes for six years. Mr. Harville estimated that he adjusted approximately 3,600 mobile home claims in his career.
The trial court offered an opportunity to cross examine the witness regarding his qualifications, but the plaintiffs' counsel declined. We find that the trial court did not abuse its broad discretion in allowing this witness to testify regarding the cause of damage and cost of repair to mobile homes. This is specialized knowledge which assisted the trial court in understanding whether there was damage to the plaintiffs' mobile homes.

DEMONSTRATIVE EVIDENCE
The plaintiffs contend that the trial court erred in allowing into evidence photographs of the interior of their homes made in May, 1993, many months after the construction project had ended. They also object to the introduction of the results of a sound test made in September, 1994, to establish the level of noise from 1-20. The plaintiffs urge that these items of proof were irrelevant. This argument is without merit.
La.C.E. Art. 401 provides:
"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
The trial court is vested with wide discretion in determining the relevancy of evidence and its ruling will not be disturbed on appeal in the absence of a clear showing of abuse of discretion. State v. Johnson, 27,522 (La.App. 2d Cir. 12/6/95), 665 So.2d 1237; Briscoe v. Briscoe, 25,955 (La.App. 2d Cir. 8/17/94), 641 So.2d 999; Laing v. American Honda Motor Company, Inc. 628 So.2d 196 (La.App. 2d Cir.1993), writ denied 94-0375 (La. 3/25/94), 635 So.2d 239.
We find that the trial court did not err in admitting the photographs or the sound test results. Although the photographs were made after the construction project ended, they demonstrate the condition of the interior of the plaintiffs' homes and show that no damage was sustained as a result of the dust. The record also shows that sound tests were made while the concrete crushing project was under way as well as after its completion. These tests demonstrate the amount of noise routinely present in the area of the plaintiffs' residences compared to the noise level present during the construction project complained of by the plaintiffs. Therefore, *1195 the trial court did not err in allowing these items into evidence.

CONCLUSION
For the reasons stated above, we affirm the judgment of the trial court in favor of the defendant, T.L. James Construction Company, and the third party defendants, Con-Trux Construction Company and Boyte Enterprises, rejecting the claims of the plaintiffs, Johnnie Carolyn Maza Barrett Clark, Tammie Burton, Richard Burton and Lois Maza. Costs in this court and the court below are assessed to the plaintiffs.
AFFIRMED.
NOTES
[1] Mrs. Barrett's husband died in March, 1992, from liver cancer. She then remarried and is referred to as Mrs. Clark throughout the transcript and in this opinion.
[2] During the trial, the plaintiffs stipulated that they were abandoning their claim for damage to their automobiles.
[3] Mrs. Burton testified that her husband, Richard Burton, named as a plaintiff in this action, was working offshore and was not available to testify at trial. Mrs. Clark testified that her mother, Mrs. Lois Maza, also named as a plaintiff in this suit, was out of state and could not appear at the trial to testify.