720 So.2d 703 (1998)
A TO Z PAPER COMPANY, INC., Doussan Properties, LLC, Tri-Gas, Inc., Twi-Ro-Pa Mills Agency, Inc., and John Kane
v.
CARLO DITTA, INC., Maloney Trucking and Storage, Inc., and The City of New Orleans, Department of Safety and Permits.
No. 98-CA-1417.
Court of Appeal of Louisiana, Fourth Circuit.
September 9, 1998.
*704 Louis R. Koerner, Jr., New Orleans, for Plaintiffs-Appellants.
Philip C. Ciaccio, Jr., New Orleans, for Defendant-Appellee Carlo Ditta, Inc.
Evelyn F. Pugh, Deputy City Attorney, Deborah L. Wilson, Chief of Civil Litigation, Avis Marie Russell, City Attorney, New Orleans, for Defendant-Appellee City of New Orleans, Department of Safety and Permits.
Before SCHOTT, C.J., and JONES and WALTZER, JJ.
WALTZER, Judge.

STATEMENT OF THE CASE
A to Z Paper Company, Inc., Doussan Properties, LLC, Tri-Gas, Inc., Twi-Ro-Pa Mills Agency, Inc. and John Kane sued Carlo Ditta, Inc., its landlord, Maloney Trucking and Storage, Inc. and the City of New Orleans, Department of Safety and Permits for a temporary restraining order, preliminary and permanent injunctions, for declaratory relief and for damages arising out of a cement batching facility planned by Ditta on land owned by Maloney located at 1585 Tchoupitoulas Street in New Orleans. The temporary restraining order was denied, and a hearing was held on the plaintiffs' motion for a preliminary injunction.
The trial court, having reviewed the affidavits submitted by the parties, denied the motion, finding that the mere construction of the plant will not cause plaintiffs to suffer irreparable harm. The trial court noted that nuisance, if any, will occur only during operation of the plant, which cannot commence without an operating certificate from the Department of Environmental Quality (DEQ). *705 The case was set for trial on the merits in July, 1998, and was continued to be heard on 21 September 1998.
Having found that the trial court did not abuse its discretion in denying preliminary injunctive relief, we affirm and remand for the trial on the merits.

STATEMENT OF FACTS
We note at the outset that the evidence is uncontroverted that the Tchoupitoulas facility has not begun operations, and that the plaintiffs seek to preliminarily enjoin its construction. It is only the request for preliminary injunctive relief that is before this Court on review. On oral argument, the parties agreed that construction of the facility has been completed, and therefore the plaintiffs' request to preliminarily enjoin construction is moot.
The affidavits submitted by plaintiffs can be divided into several categories:
1. Persons living in the Lower Garden District/Irish Channel/St. Thomas Housing Development neighborhood
Barbara Jackson, President of the St. Thomas Resident Council, states her opinion that the proposed plant introduces an additional environmental challenge to her community many of whose members suffer from asthma, bronchitis and lung cancer. Jackson expressed her opinion that the construction and operation of the batching facility is an act of environmental racism and threatens the success of the Council's creation of a "New St. Thomas" with the Department of Housing and Urban Development.
Mary M. Abell, M.D., who is medical director of the St. Thomas Health Services Clinic, states her medical opinion that environmental pollution is a contributing factor to the high morbidity and mortality rates of communities of color. In her opinion, unspecified environmental pollution from the S. Peters Street operation impacts the community and, in the apparent belief that the S. Peters Street plant had not been closed, she opines that the new plant will exacerbate the problem. She also notes that St. Thomas has been recognized by the United States government as a Health Manpower Shortage Area.
Brenda M. Dillon of St. Thomas states her opposition to the plant because of unacceptable levels of dust in the air and added traffic. She also claims the operation represents environmental racism.
Lance Hiatt, President of the Coliseum Square Association, states his group's opposition to what they view as a disincentive to residential development that devalues property and lowers the quality of life. He complains of unspecified "toxic fallout" from the plant and refers to the new operation as "permanent" and seeks closure of the South Peters Street operation. Similar affidavits were given by Thomas J. Gault, III, Neil Alexander and Michael L. Baker, directors of the Coliseum Square Association.
Brian Fazekas, who lives on the opposite corner of the new construction site, relied on the opinion of Dr. Stephen Lesser that the cement plant will produce hazardous emissions. Fazekas complains of anticipated noise and vibrations and complains that the value of his property, which he recently purchased without knowledge of the impending construction of the cement plant, will diminish. He states that on the day he executed the affidavit he was blinded by dust from the plant site and will not be able to open his windows or be outside after the plant opens. He seeks a public hearing and complains of lack of notice. To the same effect are the affidavits of Robert Graves, kidney dialysis patient Joel Brown, Brown's daughter Jolene Sanders, and Dana Love.
2. From persons operating businesses and a school near the proposed cement batching operation
Jared B. Palmer, Jr., Twi-Ro-Pa's President, said in his affidavit that he has observed the stockpile of sand, gravel and other substances located at the S. Peters Street operation being made airborne by the gentlest of breezes. When Ditta's employees are working in the piles, dust or particulates cover the street and cars. He gives his opinion of what is permitted in a Light Industrial zone and of the status of Ditta's DEQ permit. He also complains of the effect of dust on the products located in his warehouse, which is not well sealed, and expresses *706 concern about the effect of crystalline silica on himself and on his employees.
To the same effect are the affidavits of Carolyn Conway Palmer, Twi-Ro-Pa's Secretary Treasurer, of Matthew D. Palmer, A to Z's President, Robert Anderson, plant manager of the Doussan plant of Tri-Gas, Inc., and Jeffrey R. Doussan as representative of Doussan Properties. John Euper, A to Z's controller, noted that the doors of his facility are open from 6 or 7 a.m. until 5 p.m., exposing his paper products to dust which could contaminate the paper, ink, air conditioning units, 30 to 40 cars and 14 trucks.
Ron Cambias, A to Z's sales manager, stated that he recently completed an interior renovation to his home (not located in proximity to the site) and four months later there is still cement dust fallout from the renovation which caused severe sinusitis to him and members of his family. Apparently based on this experience, he believes that a cement plant close to his office will undoubtedly cause damage to his products and to the health of employees and neighbors.
Sr. Lillian McCormack of St. Michael's Special School states that her school, located approximately three blocks from the site, serves 200 handicapped children and has a staff of 41 persons. Based on Dr. Lesser's opinion, she expressed concern about the effects of exposure to plant emissions. She expresses her belief that the City should have consulted the School prior to issuance of the building permit and that the school had zoning protection from the plant.
3. From persons complaining of dust and noise caused by the now closed Ditta cement batching operation formerly located on South Peters Street.
John J. Kane, Jr. opined that if the Tchoupitoulas plant emits as much cement dust and fly ash as the "existing" plant, his property will be adversely affected. He states that his home is located near the "existing" plant and has suffered dust-related damage to appliances and antiques. He also complains of repeated bouts of sinusitis and bronchitis since moving into the home.
Resident Gloria Jefferson states that based on her knowledge of the "existing" plant, she knows that the new plant will be noisy, will emit cement dust and fly ash and concrete trucks will pass her home. She states that she understands that being closer to the emissions will make her and her children sicker and more prone to respiratory diseases.
Herbert Robinson, who lives with Jefferson and their three children near the "existing" plant, gave a similar affidavit, adding that at the time he executed the affidavit he was aware of dust coming from the new plant. He also says that he has been told the new plant will cause his children to become ill.
The defendants submitted affidavits in support of their positions. John Uhl, Ditta's Vice President in charge of safety operations, technical operations, maintenance and mix designs, states that his firm has engaged in the ready mix concrete business in metropolitan New Orleans since 1942. On 13 November 1997, Ditta applied for a new construction permit to remove existing pavement, excavate and back fill as needed, construct new pavement, an office building and a ready mix concrete batching facility at 1585 Tchoupitoulas Street. Based upon plans and specifications submitted to the City, the City granted a building permit on 16 January 1998. According to Uhl's sworn affidavit, the facility will be composed of a paved storage yard, a storage area for sand, stone and gravel and a storage silo for dry cements. No materials are manufactured at the facility. The materials are later measured, conveyed and mixed with water in concrete mixing trucks.
The Uhl affidavit establishes that the process is not considered to be a hazardous use under the permitting process of the Department of Environmental Quality for the State of Louisiana. Ditta files quarterly water quality reports on all its facilities with DEQ and has applied for a water quality permit for the facility being constructed at 1585 Tchoupitoulas Street. Ditta has also engaged the services of Safety Environmental Professionals, Inc. to prepare and submit on 24 April 1998 an application for a DEQ clean air permit. DEQ has advised Ditta that its St. Rose concrete facility is the model by *707 which other ready mix concrete facilities located in Louisiana are judged concerning clean air and water standards.
According to Uhl's affidavit, the facility will be similar to the St. Rose facility and will utilize state of the art equipment including dust collectors and a retention pond to collect storm water runoff for treatment. All Ditta facilities have always complied with DEQ requirements and no Ditta plant has ever been forced to shut down for a clean water or clean air standard violation. Since 1958, Uhl has not been informed of any complaints from any neighboring business or residence located near a Ditta facility concerning water or air quality.
Defendants submitted the affidavit of zoning consultant Patricia Fretwell, who worked since 1956 in various planning capacities for the New Orleans Department of Safety and Permits and the City Planning Commission (the Commission), of which she served as Interim Director. During the last fifteen years of her employment with the Commission, she supervised preparation of all zoning and subdivision reports, made presentations to the Commission and was liaison between the Commission and the City Council. Fretwell has been qualified as a zoning and land use expert for zoning matters located in the City of New Orleans in the Civil District Court for the Parish of Orleans and states she is familiar with the comprehensive zoning laws of the City as well as the City map of zoning districts.
According to Fretwell, 1585 Tchoupitoulas Street is located in an LI Light Industrial District. The purpose of the LI District is "to provide for a wide variety of light manufacturing, fabricating, sale, distributing and warehousing uses appropriately located near or adjacent to major thoroughfares or railroads for access. Commercial uses and open storage of materials are permitted; ..." Comprehensive Zoning Ordinance (CZO) Section 7.3.1.
Section 7.3.3 of the CZO lists typical permitted uses in an LI District. These include general light industry, warehousing, certain open storage of products, materials and vehicles, and other uses similar to those contained in a list which includes as # 14 building materials (cement, lime in bags or containers, sand, gravel, shell, lumber, and like), storage and sales, and as # 58 open storage of building materials, cement or lime in bags or containers, sand, gravel, shell, lumber, structural or re-enforcing steel, and the like, storage and sales. Permitted uses are described as light industries that manufacture, process, store and distribute materials found elsewhere, as well as the manufacturing, compounding, processing, packaging or treatment, unless otherwise stipulated, of the products contained in the list or of similar products.
Fretwell gives her expert opinion that based on CZO Section 7.3.3(14) and (58), the Ditta concrete batching facility, which entails the storage of cement in containers, stone, sand and gravel, which are then measured, conveyed and mixed with water in concrete mixing trucks and delivered to customers is a permitted use in the LI district. As a permitted use, the facility does not require a conditional use permit for construction or operation.
The affidavit of Paul May shows that he has been the Zoning Administrator for the City of New Orleans Department of Safety and Permits since 1981; for ten years prior to that, he was employed by the Commission as a city planner. He served as Chief Planner, Zoning Section for the Commission and has participated in drafting many of the amendments to the CZO, and is thoroughly familiar with its provisions. He has qualified as a New Orleans zoning and land use expert in Civil District Court for the Parish of Orleans. He is thoroughly familiar with the City's official map of zoning districts, land use history and the zoning district and regulations for 1585 Tchoupitoulas Street and 1375 South Peters Street, both of which are located in an LI Light Industrial Zoning District. May confirmed the propriety of the concrete batching plants at both locations as set forth in the CZO sections referred to in the Fretwell affidavit. May avers that since the storage of the component parts of the facility's product is permitted, their loading and delivery is considered to be permitted as well. Further, in approving the permit for the Tchoupitoulas Street facility, the City *708 concluded that the facility was an appropriate use in an LI district as a storage facility for building materials, specifically cement and lime in containers, and was not prohibited as a hazardous use.

STANDARD OF REVIEW AND BURDEN OF PROOF
Since a preliminary injunction is an interlocutory procedural device designed to preserve the status as it exists between the parties pending trial on the merits, a trial judge has great discretion to grant or to deny the relief requested. Hall v. Fertility Institute of New Orleans, 94-1135 (La.App. 4 Cir. 12/15/94), 647 So.2d 1348, 1351. Therefore, we will disturb the trial court's judgment only upon a showing of abuse of its great discretion.
In order to prevail in the trial court on their motion for preliminary injunction, it was incumbent upon the plaintiffs to show by prima facie evidence: (1) that the injury, loss or damage they will suffer if the injunction is not issued may be irreparable; (2) that they are entitled to the relief sought; and (3) that they will be likely to prevail on the merits of the case. Hall, supra, 647 So.2d at 1350-51.

FIRST ASSIGNMENT OF ERROR: The trial court erred in abstaining from exercising its jurisdiction pending action by the Louisiana Department of Environmental Quality.
Abstention is a doctrine applicable to the courts of the United States. There is no indication that the trial court "abstained" from exercising its jurisdiction. However, it is clear that the trial court found that the case was not presently in a posture to allow for determination of the nuisance claim raised by the plaintiffs. Clearly, there can be no nuisance unless and until the plant begins operation, if then. Further, according to Uhl's uncontroverted affidavit, the plant's operation is dependent on the obtaining of required DEQ permits.
Plaintiffs have attempted to bootstrap their argument against the facility under construction by providing affidavits complaining of dust and noise allegedly caused during its operation by the now closed facility on South Peters Street. These affidavits were viewed by the trial court in juxtaposition to Uhl's affidavit stating that during the forty years he has worked for Ditta the firm received no complaints concerning the South Peters Street batching plant. The trial court apparently accepted Uhl's statement, and this factual determination does not constitute an abuse of discretion.
The plaintiffs' affidavits were conclusory and anecdotal, and, where opinions were given concerning medical or legal conclusions, the underlying facts were absent. Legal opinion concerning applicable zoning law was hazarded by affiants who failed to state any zoning law expertise. Indeed, since the facility was not operational at the time the affidavits were secured, there could have been no direct evidence of damage caused by the emissions since the nature and amount of emissions, if any, could not then be determined. We find no abuse of discretion in the trial court's failure to find that these affidavits supported preliminary injunctive relief.
The authorities relied upon by plaintiffs uniformly involved claims against facilities that were in operation and whose operation was causing damage to plaintiffs. In the instant case, plaintiffs seek to forestall construction pursuant to a building permit where there is and, as the trial court doubtless recognized, can be no showing of nonspeculative damage. Plaintiffs' affidavits make it clear that while they may anticipate future damage under certain conditions, there is no showing that those conditions presently exist or will exist. We find no error in the trial court's denial of preliminary relief pending construction of the facility.
This assignment of error is without merit.

SECOND ASSIGNMENT OF ERROR: The district court erred in failing to grant preliminary injunctive relief in the absence of a showing of irreparable harm where plaintiffs demonstrated violation of the zoning law and failure to apply for a DEQ air emissions permit.
Plaintiffs produced no expert evidence to contradict the Fretwell and May affidavits that establish that the concrete batching facility is within the permitted uses *709 of the LI zoning district. May's erroneous identification of the facility's street address does not, as plaintiffs would suggest, render incompetent his basic expert opinion that the operations to be conducted at the facility constitute an LI permitted use pursuant to CZO sections 7.3.1 and 7.3.3(14) and (58). We cannot say that the trial court abused its discretion in accepting the expert opinions of Fretwell and May. The affidavits submitted by plaintiffs suggesting that the facility did not comply with the CZO's LI designation were given by persons who did not possess the qualifications of a zoning expert, and gave only their lay opinions. The trial court did not abuse its discretion in disregarding those opinions.
This assignment of error is without merit.

THIRD ASSIGNMENT OF ERROR: The district court erred in refusing to consider evidence of alleged violations of the light industrial zoning by construction of a concrete batching plant, which is a hazardous industrial use.
Plaintiffs suggest that the concrete batching facility is not specifically listed in the CZO as a permitted use in an LI district and, therefore, issuance of the contested building permit violates the CZO. The plaintiffs must carry the burden of proving that the zoning administrator's authorization of a concrete batching plant was an arbitrary and unreasonable exercise of authority; whenever the issue is the debatable propriety of such a zoning decision, the decision will be upheld. Palm-Air Civic Association v. Syncor International, 97-1485 (La.App. 4 Cir. 3/4/98), 709 So.2d 258. No evidence of such arbitrary and unreasonable conduct was introduced. The Fretwell and May affidavits support the conclusion that the zoning authority properly compared the batching facility to the uses permitted in CZO Sections 7.3.1 and 7.3.3(14) and (58) and found the facility to be a permitted use. See Lake Forest, Inc. v. Board of Zoning Adjustments, 487 So.2d 133 (La.App. 4 Cir.), writ denied, 496 So.2d 1030 (La.1986).
We find no support for plaintiffs' suggestion that the restrictions imposed on a batching plant in an RS-1 district, the most limiting zoning designation, should be applied in the Light Industrial district in which the batching facility is located.
Plaintiffs admit that the provisions of CZO section 7.4.4 that they argue could have brought a cement batching plant within the definition of a hazardous industrial use were repealed in 1997. They therefore have no application to the permit of which plaintiffs complain.
This assignment of error is without merit.

FOURTH ASSIGNMENT OF ERROR: The district court erred in refusing to consider allegations of nuisance and hardship based on medical affidavits and based on actual harm allegedly caused by the batch plant at 1375 S. Peters Street.
Our review of the affidavits of the neighboring residents shows clearly that many were not aware that the South Peters Street facility was closed. Further, there is no claim for preliminary injunction against that facility's operation.
The uncontroverted Uhl affidavit states that the Tchoupitoulas Street facility will be patterned after Ditta's St. Rose plant, not the former South Peters Street facility. Absent evidence that the new facility will be identical to the South Peters Street facility, the affidavits describing problems arising from the latter are irrelevant.
This assignment of error is without merit.

FIFTH ASSIGNMENT OF ERROR: The district court erred in refusing to consider evidence of alleged violations of due process, namely the right to a hearing prior to issuance of the City's building permit and the right to appeal the granting of the permit to the Board of Zoning Adjustments (BZA).
The trial court had before it May's uncontroverted evidence that the batching facility was not a conditional use, but was a permitted use under the CZO. Plaintiffs provided no evidence that a hearing prior to issuance of the building permit was mandated by law and we find no such requirement.
Plaintiffs contend that Ditta's delay in posting its building permit denied them their right to a due process hearing before the BZA. We note that there is no requirement *710 that a permit be posted as soon as it has been issued. Ordinance No. 11,625 M.C.S., as amended, sect. 103.7.5 of the New Orleans Building Code requires that the permit be posted as soon as work commences on the building site. There is no evidence that Ditta violated this ordinance.
CZO section 14.5.4 provides that the permit decision of the Director of the Department of Safety and Permits may be appealed within a reasonable time as provided by BZA Rules. Section II(A) of the BZA's Rules, Policies and Procedures provides that every appeal or application for variation or modification shall be taken within forty-five days of action on the permit. CZO section 14.11 provides that appeals from BZA decisions are by writ to the Civil District Court for the Parish of Orleans within thirty days of the BZA decision.
While plaintiffs lost their right to administrative review by failing to appeal within the foregoing time frame, they retain their right to prove a violation of zoning restrictions under La.R.S. 9:5625. Palm-Air Civic Association v. Syncor, 95-0934 (La. App. 4 Cir. 1/19/96), 667 So.2d 1185. This case would be heard by the Civil District Court for the Parish of Orleans, which would also hear a timely appeal from a decision of the BZA.
We find no violation of plaintiffs' right to a determination of violation, vel non of the CZO.
This assignment of error is without merit.

CONCLUSION AND DECREE
For the foregoing reasons, we find no abuse of the trial court's discretion in denying plaintiffs' motion for a preliminary injunction and remand the case to the trial court for the hearing scheduled for 21 September 1998 on the merits.
AFFIRMED AND REMANDED.