|, PLOTKIN, Judge.
Plaintiff, James V. St. Raymond, appeals a trial court judgment denying his “Petition for Injunction and Temporary Restraining Order” relative to a stop work order issued by the City of New Orleans. For the reasons stated below, we affirm.
I. FACTS
The property subject to the stop work order that prompted Mr. St. Raymond’s petition for injunction is located at 1400-1404 Audubon Street in Uptown New Orleans. The property is situated in an area zoned RD-2, Two Family Residential District. However, on October 6, 1988, the New Orleans City Council passed Ordinance No. 12753, which authorized the establishment of a conditional use, allowing the construction of three townhouses on the property.
The ordinance specifically overruled a recommendation made by the City Planning Commission following a public hearing that the conditional use petition be denied. The ordinance was subject to a seven-foot waiver of the requirement that side yards be a minimum of ten feet, allowing side yards of only three feet. _J¿The ordinance also contained six “Provisos” relative to such things as curb cut, protection of trees in the public right of way, landscaping and fencing plan, refuse area, signs, lighting, site plan, and lots of record.
“Section 3” stated that the Ordinance would have “legal force and effect” only after fulfillment of and compliance with the Provisos. On October 19, 1989, by Ordinance 13507, the New Orleans City Council amended Section 3 to state as follows: “If the development or construction of the conditional use authorized herein is not commenced by November 7, 1990, the provisions of this ordinance shall be null, void, and of no legal force and effect.” Section 3 was again amended by the City Council on November 8, 1990, by Ordinance 14224, to provide that the Ordinance would become null, void and of no legal force and effect if the development or construction was not commenced by November 7, 1991.
Some seven and one-half years later, on July 20, 1998, Mr. St. Raymond wrote a letter to Ms. Deborah Wilson of the New Orleans City Attorney’s Office, seeking certification that the ordinances allowing the condition use were still valid and in full legal force and effect. Mr. St. Raymond stated, in pertinent part, as follows:
*557 I believe that the parties involved in the Audubon Street Townhome Project took numerous concrete actions between December 6,1990 and November 7,1991 which both individually and collectively constitute legitimate “development and construction of the conditional use authorized herein.”
The letter goes on to summarize six enumerated “concrete actions.” However, these “concrete actions” are actually letters and an advertising flyer. Information stated in “concrete action” 5 has become the focus of the parties’ attention in this case; it stated, in pertinent part, as follows: “July 12, 1991 letter from the Audubon Street development’s general contractor Hunter Charbonnet to | aCouncilmember Peggy Wilson informing her that as of July 10, 1991, new sidewalks were poured and back in place.”
On August 13, 1998, Assistant City Attorney Wilson generated an Inter-Office Memorandum to the Deputy Director of the City Planning Commission regarding Ordinance Nos. 12,753 M.C.S. and 14, 224 M.C.S, which memorandum stated, in pertinent part, as follows:
This is to advise that I have reviewed the referenced zoning ordinances for the purpose of determining whether the conditional use earlier established for 1404 Audubon Street lapsed for failure to commence development within one year. It appears that the steps taken by the developers, including the pouring of concrete in connection with the development, were sufficient to prevent the conditional use from having lapsed.
A copy of the memorandum was sent to Mr. St. Raymond.
Although Mr. St. Raymond petition for injunction contains no evidence of this fact, he claims that he obtained the property in October 1998, only after he received Ms. Wilson’s opinion that the conditional use ordinance had not lapsed. On January 21, 1999, the New Orleans Department of Safety and Permits issued Building Permit # B98006019 approving a new construction project of a multi-family dwelling. The work was described as follows: “NEW CONSTRUCTION OF NON-CONFORMING TOWN HOUSE (3-UNIT) IN RD-2 ZONE PER ORD# 12,753 & 14,224 MCS ON LOTS D-l, D-2, D-3 AS PER PLANS.”
Mr. St. Raymond began his construction project. However, shortly thereafter, apparently between April 9, 1999 and April 23, 1999 [1], the Department of Safety and Permits issued a “Stop Work” order, “By order of the City Council | ¿Ordinance # 19237, Calendar # 22,527.” That ordinance, dated April 22, 1999, purported to repeal Ordinance 12,753; no reasons for the repeal were stated.
Mr. St. Raymond responded to the stop work order with a letter dated April 20, 1999[2] to Keith Johnson, Director of Safety and Permits, outlining the steps he took to secure the permit. He concluded his narrative as follows:
With permits in hand, I proceeded to drive 145, 30-foot piles in the ground, formed the foundation, and had electrical power connected to the job site. I am just days away from filling and pouring the foundation.
Mr. St. Raymond claims that the original stop work order was thereafter lifted, although he attached no evidence to prove that fact to his petition for injunction. At any rate, a time-line attached to the affidavit of Tom Stobo, project manager for NSL Construction, Inc., the general contractor on the construction project, indi *558 cates that the work commenced on April 23, 1999, the day after the city council repealed the original conditional use ordinance.
A second stop work order was eventually issued; although the date of that order is impossible to determine from the record, Mr. St. Raymond’s petition alleges that it was issued on June 17, 1999. That stop work came from the Building Inspection Section of the Department of Safety and Permits; it referenced violations of Article 1125, § 103.1 of the New Orleans Building Code Ordinance, relative to the requirements for building permits. In other words, the Department of Safety and Permits cited Mr. St. Raymond for undertaking construction without a building permit.
On June 16, 1999,[3] Mr. St. Raymond filed a “Petition for Writ of Injunction and Temporary Restraining Order,” reciting the above facts and alleging [¡¡constitutional violations, abuse of discretion, unreasonable exercise of police power, and excessive use of power, as well as detrimental reliance on the issuance of the building permit. Mr. St. Raymond alleged that he would experience irreparable injury if the stop work order was not rescinded.
On June 21, 1999, a Restraining Order was issued by the Civil District Court Clerk of Court, preventing the City from preventing “construction ... only sufficient to close said property from the elements excluding roof.” The trial court heard argument on the preliminary injunction on June 24, 1999, but took no testimony and accepted no evidence. On the basis of memoranda and attachments filed by Mr. St. Raymond and the intervenor, Audubon Street Association, the trial court entered judgment in favor of the City of New Orleans, denying Mr. St. Raymond’s motion for preliminary injunction on June 24, 1999. In reasons for judgment, the trial court found that the city attorney’s opinion that the conditional use ordinance had not lapsed was in error and that Mr. Raymond’s claim was therefore one for damages, and thus not appropriate for injunction, which requires a showing of irreparable harm.
On July 1, 1999, Mr. St. Raymond filed a “Second Amended and Supplemental Petition,” changing his constitutional claims and further defining his alleged damages. Mr. St. Raymond also prayed alternatively for damages. Also on July 1, Mr. St. Raymond filed a petition for an expedited appeal, making the following five arguments:
1. St. Raymond has a constitutionally protected property right in the building permit issued by the City after the City advised the conditional use ordinance was still valid.
jfi2. The City Council’s actions in passing a new ordinance retroactively repealing the earlier grant are arbitrary and capricious and an abuse of power.
3. St. Raymond has presented a prima facie case for detrimental reliance on the City’s grant of the building permit.
4. The trial court erroneously substituted his own opinion that the Ordinance had lapsed.
5. The trial court abused his discretion in denying a preliminary injunction to St. Raymond.
II. ENTITLEMENT TO INJUNCTION
The grounds for issuing an injunction are established by La. C.C.P. art. 3601, which provides, in pertinent part, as follows:
An injunction shall issue in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law....
*559 During the pendency of an action for an injunction the court may issue a temporary restraining order, a preliminary injunction, or both, except in cases where prohibited, in accordance with the provisions of this Chapter.
In order to prove entitlement to a preliminary injunction, a moving party must make a prima facie showing of the following things: (1) that the injury, loss or damage he will suffer if the injunction is not issued may be irreparable; (2) that he is entitled to the relief sought; and (3) that he will be likely to prevail on the merits of the case. A to Z Paper Co., Inc. v. Carlo Ditta, Inc., 98-1417, p 9 (La.App. 4 Cir. 9/9/98), 720 So.2d 703, 708. See also General Motor's Acceptance Corp. v. Daniels, 377 So.2d 346, 348 (La.1979).
The trial court has great discretion to determine whether a preliminary injunction should be granted. A to Z Paper Co., 98-1417 at 8-9, 720 So.2d at 708. Thus, an appellate court may not overturn a trial court’s denial of a preliminary injunction absent a clear abuse of discretion. Id. In the instant case, the trial court denied Mr. St. Raymond’s application for preliminary injunction because he found [7no irreparable injury. However, Mr. St. Raymond claims that no irreparable injury was required in this case because he had a constitutionally-protected property right in the building permit issued by the City.
A. Constitutionally-protected property right
Generally, Louisiana courts have held that “[a] preliminary injunction may not issue without a showing of irreparable harm unless the action sought to be enjoined directly violates the constitution or prohibitory law.” St. Charles Gaming Co., Inc. v. Riverboat Gaming Commission, 94-2697, p. 5 (La.1/17/95), 648 So.2d 1310, 1314. Mr. St. Raymond claims that the City’s actions in this case violated constitutional law, relieving him of the requirement of proving irreparable harm in order to prove entitlement to an injunction.
In support of this argument that he has a constitutionally-protected property right in the building permit, Mr. St. Raymond cites Standard Materials, Inc. v. City of Slidell, 96-0684 (La.App. 1 Cir. 9/23/97), 700 So.2d 975 and Dunn v. Parish of Jefferson, 256 So.2d 664 (La.App. 4 Cir.), writ denied, 260 La. 1137, 258 So.2d 382 (1972). In Dunn, this court affirmed a trial court judgment ordering Jefferson Parish to reinstate a building permit issued for the placement of a house trailer and permanently enjoining the parish from canceling that permit. 256 So.2d 664. After surrounding neighbors complained about the issuance of the permit, the parish “changed its mind” and sought to revoke the permit. Id. at 666. In reaching its decision, the trial court found as follows: “this permit involved in this case was validly issued by the Parish and was issued under no error of fact by them and was not the result of any misrepresentation on the part of the Plaintiff, Mr. Dunn.” Id. In affirming the decision, the appellate court founded that “the plaintiff has |sacquired a vested right to the permit of which she cannot now be deprived.” Id. at 667. The appellate court quoted 13 Am.Jur.2d Buildings § 10, as follows:
On the question of revocation of a permit which has been properly obtained, there is some difference of opinion. It has been generally held that a municipal building permit or license may not arbitrarily be revoked by municipal authorities, particularly where, on the faith of it, the owner has incurred material expense. Such a permit has been declared to be more than a mere license revocable at the will of the licensor. When in reliance thereon, work upon the building is actually commenced and liabilities are incurred for work and material, the owner acquires a vested property right to the protection of which he is entitled.
Id. Finding that the parish’s offer to reimburse the plaintiff for his expenses was “obviously inadequate” under the circum *560 stances of that case, the court in Dunn concluded that “the injunctive relief which was granted is the only proper remedy.” Id.
However, in Standard Materials, Inc., 96-0684, 700 So.2d 975, also cited by Mr. St. Raymond, the appellate court reversed a trial court judgment preventing the City of Slidell from prohibiting a manufacturer from operating a concrete batch plant on its property based on zoning issues. Id. Although the Standard Materials, Inc. court considered a number of constitutional arguments, the court held that Standard materials did not meet the “property interest” requirement for a substantive due process claim. Id. at 16, 700 So.2d at 987.
Moreover, a study of all of this court’s caselaw on this issue clearly reveals the fallacy in Mr. St. Raymond’s arguments. Although the court found in Dunn that the plaintiffs had a constitutionally-protected property right in a building permit, the vast majority of this court’s decisions, both before and after Dunn, have held that the issuance of a building permit does not confer any constitutionally-protected property rights on the holder of the permit. See 7004 St. Charles Avenue Corp. v. City of New Orleans, 97-0299 (La.App. 4 Cir. 12/10/97), 704 So.2d 909, writ denied, 98-0036 (La.3/13/98), 712 So.2d 881; Cross v. City of New Orleans, 446 So.2d 1253 (La.App. 4 Cir.), writ denied, 449 So.2d 1359 (La.1984); Pailet v. City of New Orleans, 433 So.2d 1091 (La.App. 4 Cir.), writ denied, 440 So.2d 757 (La.1983); Brennan v. Board of Zoning Adjustments, 371 So.2d 324 (La.App. 4 Cir.1979); Nassau Realty Co. v. City of New Orleans, 221 So.2d 327 (La.App. 4 Cir.1969); State ex rel. Jacobson v. City of New Orleans, 166 So.2d 520 (La.App. 4 Cir.1964).
Of the above cases decided after Dunn, all have declined to extend the holding in Dunn, which was expressly based on the fact that the permit was not issued in error, to situations where the permit was issued in error. In this regard, this court has adopted the following trial court conclusion from Naussau: “The mere fact that a building permit was issued in error and contrary to the laws of the City does not vest an irrevocable right to proceed under that permit contrary to subsequent action canceling the permission previously granted.” 221 So.2d at 330. See also Cross, 446 So.2d 1253. That conclusion is consistent with the following statement found at 13 Am.Jur.2d Building § 11, which immediately follows the section quoted by this court in Dunn: “Generally, it may be said that a building permit issued in violation of law or under mistake of fact confers no right, and may be revoked upon discovery of the error, even after business operations have begun.”
In the instant case, the trial court[4] found that the permit was erroneously issued on the basis of the assistant city attorney’s incorrect assurance that the 1 ^conditional use ordinance had not lapsed. The trial court found that the conditional use ordinances had expired on their faces when the previous owners of the property failed to take steps other than paving the sidewalk prior to November 7, 1991. The court stated as follows:
The sidewalk did not satisfy the conditions of the earlier ordinances. Implicit in those ordinances is that the constructions contemplated are of the dwelling structures, not the paving of the sidewalk. Common sense dictates that the paving of the sidewalk was in the nature of a safety measure for those walking in this heavily populated area and possibly complaints of neighbors about the dan *561 gerous nature of the situation. Additionally, it is unclear precisely whether the sidewalk is in whole or in part on Mr. St. Raymond’s land.
Mr. St. Raymond does not contest the trial court’s finding that the only action taken by the previous owner was the pouring of sidewalks. He simply claims instead that the issuance of the building permit itself somehow granted him a constitutionally-protected property right. However, his argument is not supported by the record in this case or the law of this state. Accordingly, we find no error in the trial court’s conclusion that the building permit was erroneously issued. Mr. St. Raymond’s argument that he is not required to prove irreparable injury in order to be entitled to the issuance of a preliminary injunction is in error.
B. Irreparable injury
Mr. St. Raymond also contests the trial court’s conclusion that all damages he suffered were monetary damages, which do not qualify as irreparable injury. Because injunction is a harsh, drastic and extraordinary remedy, the first element that generally must be established by a party seeking a preliminary injunction is irreparable injury without adequate remedy at law. Boutte v. Lawrence, 98-2548, p. 3 (La.App. 4 Cir. 11/18/98), 724 So.2d 250, 252. Irreparable injury means that the applicant cannot be adequately compensated in money damages for his injury or that the applicant will suffer injuries which cannot be measured by pecuniary standards. Id.
In support of his claim that he is entitled to a preliminary injunction in lieu of which he will suffer irreparable injury, Mr. St. Raymond attached to his petition Mr. Sto-bo’s affidavit. Attached to the affidavit was a time-line detailing sixteen steps in the work done on the project between March 11, 1999 and June 21, 1999, as well as ten photographs “showing the development of the project.” The photographs indicate the outside walls had been framed and most of the first floor had been bricked before the project was discontinued. Mr. St. Raymond also presented the affidavit of Cynthia House, president of NSL. That affidavit listed the following damages, which “might occur” if the stop work order was not rescinded:
a)- an escalation of costs from contractors on original bids because of extended general conditions;
b) loss of guaranteed subs pricing due to schedule delays;
c) escalation in material costs;
d) deterioration of material stored on-site;
e) structural deterioration of frame caused by weather due to the unsecured condition of the building;
f) vandalism and theft;
g) Due to the condition of the landscape, there is no positive drainage or silt control;
h) The neighboring properties could be damaged by heavy rainfall due to incomplete landscaping plan;
i) There has been additional insurance costs; and
j) In the present condition, structural integrity of the building is compromised.
We note that Mr. Stobo’s time-line reveals that much of the construction and possible future damages result from work undertaken after the initial stop work border was issued sometirrie between April 9, 1999 and April 23, 1999. That conclusion is supported by Mr. St. Raymond’s statements in his April 20, 1999 letter to the director of safety and permits. As that letter shows, at the point that stop work order was issued, the pilings had been driven, but no other action had been taken; the foundation had not even been poured. As noted, Mr. St. Raymond failed to attach to his petition for injunction evidence to prove his assertion that the original stop work order was lifted, allowing him to continue the project. In fact, the City’s second stop work order was based *562 on the fact that no permit for the construction had been issued, which might indicate the City’s belief the original stop work order was ever lifted. Mr. St. Raymond’s damages might have been considerably less had he had not continued the project after the issuance of the original stop work order.
Moreover, neither the fact that Mr. St. Raymond has now completed considerable construction — even if he completed that construction in good faith reliance on the building permit — nor the fact that • he might incur additional expenses is sufficient to establish irreparable injury. On the contrary, all of the possible damages suggested by Mr. St. Raymond can either be adequately compensated in money damages and/or can be measured by pecuniary standards. Accordingly, Mr. St. Raymond has failed to establish the first element necessary to prove entitlement to a preliminary injunction — i.e., irreparable injury. Accordingly, we find no abuse of discretion in the trial court judgment dismissing Mr. St. Raymond’s petition for preliminary injunction.
Because the only issue before this court at this juncture is the propriety of the trial court judgment dismissing the petition for injunction, all other arguments raised by Mr. St. Raymond are pretermitted.
III. CONCLUSION
Accordingly, the trial court judgment dismissing Mr. St. Raymond’s petition for preliminary injunction is affirmed.
AFFIRMED.

. These dates are taken from the “time-line’' attached to the affidavit of Tom Stobo, project manager for NSL Construction, Inc., the general contractor on the construction project. Mr. Stobo's affidavit was filed in the record of this case as an attachment in support of Mr. St. Raymond's peLition for injunction.

. Interestingly, Mr. St. Raymond's letter is dated before the date of the City Council's ordinance repealing the conditional use ordinance.

. Again, this date is the day before Mr. St. Raymond claims the second "Stop Work" order was issued.

. Mr. St. Raymond argues that the trial court's judgment is somehow suspect because he "substituted his interpretation of the enabling ordinance” for the interpretation of the city attorney. However, it is the trial court’s unique providence to interpret the ordinance, not the providence of the city attorney. Thus, this argument has no merit. The prohibition against substituting one’s own judgment applies only to appellate courts considering judgments of trial courts.