SCHOTT, J.
Pro Tempore.
Plaintiffs have taken an appeal from a judgment dismissing their petition for a permanent injunction. They are seeking to close a concrete batching plant operated by defendant, Carlo Ditta, Inc., at 1585 Tchoupitoulas Street in New Orleans. Other defendants are Maloney Trucking and Storage, Inc., the owner of the property, and the City of New Orleans. Plaintiffs are neighbors of the plant. The issues are whether the obtaining and issuance of the permit for the construction of the plant violated plaintiffs’ rights to due process, whether the zoning law of the city permitted the use of this property for this purpose, and whether plaintiffs proved the plant was a nuisance. We affirm.
In November 1997, Ditta applied to the New Orleans Department of Safety and Permits for a permit to construct the plant. Zoning Administrator Paul May determined that the planned facility complied with the New Orleans Building Code and was a permitted use within the Light Industrial (LI) zoning classification which applied to the area under the Comprehensive Zoning Ordinance (CZO). Therefore, a building permit was issued on January 16, 1998. After the lot was cleared, construction began in March 1998. About the same time, some of the plaintiffs herein met with City Councilman Oliver Thomas to voice their objections |3to the facility. As the forty-five day time period to appeal the issuance of the building permit to the Board of Zoning Adjustments (BZA) had expired, plaintiffs filed the instant suit to enjoin the construction. The trial court denied plaintiffs motion for preliminary injunction.
On July 23, 1998, a Certificate of Use and Occupancy was issued, and the Ditta facility began operating. On September 9, 1998, this court affirmed the denial of the preliminary injunction and remanded for trial on the merits. A to Z Paper Co. v. Carlo Ditta, Inc., 98-1417 (La.App. 4 Cir. 9/9/98), 720 So.2d 703. Following trial, the trial court dismissed the plaintiffs’ petition. In reasons for judgment, the trial court found that plaintiffs failed to prove that the plant constituted a nuisance as defined by LSA-C.C. art. 667, especially considering the industrial nature of the neighborhood; they failed to prove any impropriety in the process which led to the issuance of the permit by the city; even if the plaintiffs had proved they were deliberately misled concerning the time which they had to appeal to the BZA, this issue was made moot by virtue of this action under R.S. 9:5625; and the permit was properly issued under the LI zoning in place at the time of its issuance.
On appeal, plaintiffs failed to provide an assignment of errors, referring to issues as “Questions Presented”, but they argue that their right to due process was violated by the lack of notice and hearing regarding the issuance of the building permit; by a conspiracy on the part of city officials and Ditta which prevented them from receiving proper notice in order to take a timely appeal from the issuance of the permit; and because their property was taken from them without compensation because of the construction of the plant. They contend that the permit was issued to Ditta in violation of the CZO; the operation of the Ditta plant constitutes a | ¿nuisance; and the trial judge erred by excluding evidence relative to a similar facility Ditta formerly operated on South Peters Street.
*45 We first consider plaintiffs’ due process arguments. There is evidence that some of the plaintiffs received prior notice that the plant would be built, such as Mr. Ditta’s telephone conversations with Jared Palmer between July 1997 and January 1998, and Mr. Maloney’s letter to his neighbors prior to leasing the property in July 1997. Claude Mauberret, an elected City Assessor, testified that he conducted an investigation at the request of the plaintiffs, he saw a copy of the permit in January or February, and he reported this to the plaintiffs. Therefore, it is incongruous for plaintiffs to complain they did not have sufficient notice of the permit to file a timely appeal before the BZA. Plaintiffs argue mightily that they were the victims of political skullduggery on the part of Ditta, May and others, but they failed to present evidence to support this argument. The trial court found, “The evidence is not persuasive that the permit was issued other than in the normal course of City Hall business.” This finding is not manifestly erroneous.
In any event, because the concrete batching plant was determined to be a permitted use under the LI zoning classification in place at the time, plaintiffs were not legally entitled to either prior notice or a hearing. This issue was already decided by this court in A to Z Paper Company, Inc. v. Carlo Ditta, Inc., supra, at p. 13, 720 So.2d at 709, and should be considered res judicata.
Plaintiffs contend Ditta’s delay in posting the building permit at the site and a “conspiracy” of silence on the part of Paul May and other unnamed city officials deprived them of the opportunity to file a timely appeal and receive a hearing before the BZA. Again, this issue was decided in the prior appeal, wherein the court noted that Ditta was not legally required to post the building permit at the |stime it was issued; rather, the Building Code requires that the permit be posted when construction begins. Id. at p. 13, 720 So.2d at 709-710. The court noted that there was no evidence that Ditta had violated this requirement; and the evidence at trial does not prove otherwise.
Moreover, as the court held in plaintiffs’ prior appeal, the loss of their right to appeal to the BZA was cured by their opportunity to prove a violation of zoning restrictions under R.S. 9:5625 at trial in the district court, as that is the same court which would hear a timely appeal from a decision of the BZA. Id.
Finally, plaintiffs contend that permitting the Ditta plant in an area that was later zoned MU constituted an unconstitutional taking of their property by the government without compensation. This argument is not at all persuasive. When Ditta built the plant, the property was zoned LI and the plant was a permitted use. A subsequent change in the zoning could not deprive Ditta of using the property as he did. Furthermore, plaintiffs failed to prove at trial that their property values have diminished since the plant began operating. On the contrary, some evidence introduced at trial indicated that property values in the area have recently risen, despite the presence of the plant. We have concluded that plaintiffs’ due process arguments are without merit.
We next consider plaintiffs’ argument that the permit was issued in violation of the CZO. This court observed in the previous appeal:
The plaintiffs must carry the burden of proving that the zoning administrator’s authorization of a concrete batching plant was an arbitrary and unreasonable exercise of authority; whenever the issue is the debatable propriety of such a zoning decision, the decision will be upheld. Palm-Air Civic Association v. Syncor International, 97-1485 (La.App. 4 Cir. 3/4/98), 709 So.2d 258.
Id. at p. 11-12, 720 So.2d at 709. This court went on to conclude that no evidence of such arbitrary and unreasonable conduct had been introduced, and that the *46 affidavits of Patricia Fretwell and Paul May supported the conclusion that the zoning authority had properly compared the concrete batching facility to the uses permitted in Sections 7.3.1 and 7.3.3(14) and (58) of the CZO and had found the facility to be a permitted use in the LI zone. Id. Both Ms. Fretwell and Mr. May testified at trial. Their testimony was essentially the same as their affidavits.
According to Section 7.3.3 of the CZO, permitted uses in the LI district include the warehousing, storage (open or enclosed), manufacturing, processing, compounding, packaging, treatment and distribution of products listed or similar to those listed in the section. Number 14 on the list is “Building materials (cement, lime in bags or containers, sand, gravel, shell, lumber, and the like), storage and sales.” Similarly, Number 58 on the same list is “Open storage of building materials, cement or lime in bags or containers, sand, gravel, shell, lumber, structural or reinforcing steel, and the like, storage and sales, but not steel fabrication or junk storage.” A concrete batching facility stores the component elements of concrete (cement in silos, sand and gravel in open piles), which are then loaded into a cement truck along with water and mixed in the truck en route to the customer. Plaintiffs did not introduce evidence sufficient to refute the testimony of Mr. May that the functions performed by the Ditta plant are similar to and compatible with those listed in the CZO as permitted in a district zoned LI.
In this court plaintiffs argue that they “impeached” May’s affidavit and his testimony because of two discrepancies or errors in his affidavit. These were his statements in his affidavit: “Concrete batching plant’ is not listed as a permitted |7use in any zoning district in the City” and his statement that Ditta’s plant on South Peters Street was in an LI district.
As to the first statement it was arguably incorrect because the CZO does provide for a concrete batching plant as a conditional use in a residential district for a one-year period only, and this specific authorization in the residential district automatically applies to all lower classifications including LI. This provision was designed to enable developers and even the State Department of Transportation to operate concrete batching plants on a temporary basis while construction projects were in progress. In questioning May and Fretwell an attempt was made to have them admit that the only authority for the permit was this conditional use permit provision which required a hearing and would provide only for the issuance of a temporary permit.
A reading of May’s and Fretwell’s testimony convinces us that their previous affidavits were not contrived and, at most, contained harmless errors. May and Fret-well both explained that Ditta was applying for a permit for a use that was included as stated above in a LI district. That permit had nothing to do with the conditional use provisions included in the residential district uses. Plaintiffs’ argument in this regard obfuscates the real issues in the case.
Plaintiffs also make much over the fact that Fretwell, when she was working for the City, had issued an opinion that the conditional use provision for temporary batching plants was the only authority for one in" a LI area; however, she explained that this interpretation was the one prevailing in her department at the time, but that she personally adhered to the interpretation that a batching plant was an authorized permanent use in a LI district.
I sIn the final analysis plaintiffs are attempting to discredit the testimony of May and Fretwell in this court, nowithstanding that the trial court accepted their credibility. There is no basis for this court to reverse the trial court in this regard.
Plaintiffs also attempted to show that the operation of a concrete batching plant should have been considered a conditional use in this particular LI district because of the city’s plans to implement in *47 the future the Lower Garden District Strategic Renaissance Plan, which called for the area to be re-zoned MU, a change that actually took place in May 1998. For example, plaintiffs introduced the testimony of Dubravka Gilic, a member of the City Planning Commission responsible for implementing the Strategic Plan, that when she was informed of the issuance of the Ditta permit, she told Paul May that she disagreed with his decision and that she believed there should have been a conditional use hearing before the City Planning Commission because the operation of the Ditta plant was contrary to the goals of the Strategic Plan. Unfortunately, the fact that the Ditta plant was incompatible with the city’s future plans for the area or with the MU classification eventually imposed on the area is irrelevant to plaintiffs’ case. As the trial judge pointed out, the Ditta permit was issued during a five-month “window” of time between the expiration of the zoning moratorium known as an “interim district,” which expired in December 1997, and the effective date of the zoning amendment creating the mixed use district. The issuance of a permit must be determined with reference to the existing zoning classification, not one that is planned for the future. Therefore, we cannot say the trial judge erred in his determination that the issuance of the Dit-ta permit did not constitute a violation of the zoning laws.
Finally we consider plaintiffs’ argument that the plant was a nuisance. La. Civ.Code art. 667 provides that a proprietor may not make any work on his ^property which deprives his neighbor of the liberty of enjoying his own, or which causes damage to his neighbor. However, while property owners are not required to suffer damage as a result of work undertaken on their neighbor’s property, certain inconveniences must be tolerated, the extent of which depends upon the circumstances. Barrett v. T.L. James & Co., 28,170, p. 6 (La.App. 2 Cir. 4/3/96), 671 So.2d 1186, 1191, writ denied, 96-1124 (La.6/7/96), 674 So.2d 973; La. Civ.Code art. 668. The Louisiana Supreme Court has reiterated that while a landowner may exclude any interference with his own property, he must tolerate certain inconveniences resulting from the lawful use of his neighbor’s property. State through Dept. of Transportation and Development v. Chambers Investment Co., Inc., 595 So.2d 598, 604 (La.1992).
Whether the use of property ceases to be a mere inconvenience and becomes a nuisance is a question of fact, and, thus, a trial court’s finding in this regard cannot be overturned on appeal absent manifest error. Arnold v. Town of Ball, 94-972, pp. 6-7 (La.App. 3 Cir. 2/1/95), 651 So.2d 313, 318. In determining whether activity or work occasions real damage or mere inconvenience, for purposes of a nuisance claim, the trial court is required to determine the reasonableness of the conduct in light of the circumstances; this analysis requires consideration of factors such as the character of the neighborhood, the degree of intrusion, and the effect of the activity on the health and safety of neighbors. Barrett v. T.L. James & Co., supra, at pp. 6-7, 671 So.2d at 1191.
In the instant case, plaintiffs attempted to prove the Ditta facility, which had been in operation for about two months at the time of trial, constituted a nuisance because it generated unreasonable noise, dust, flooding and traffic. The trial judge Imfound that in view of the industrial nature of the neighborhood, the Ditta plant did not constitute a nuisance.
Plaintiffs presented testimony of people who owned and/or worked for other businesses in the neighborhood of Ditta. As to noise, the evidence showed that the most annoying noise, a high-pitched whining generated by trucks delivering cement to the plant, occurred on an average of only two times per day and the unloading process lasted thirty to forty minutes at a time. The testimony of plaintiffs’ expert *48 on noise was excluded by the trial court because of the lack of sufficient notice to the defendants concerning his testimony; the testimony was proffered. Although the plaintiffs do not specifically assign this ruling as error on appeal, the exclusion was not an abuse of the trial court’s discretion because the defendants were deprived of the opportunity to obtain an expert or do independent testing necessary to cross-examine the witness.
As to dust, several witnesses testified that there was dust on their cars parked on Tchoupitoulas, one witness said she had observed dust blowing from the Ditta sand piles, and another witness had noticed that there was dust entering his open warehouse. However, there was insufficient evidence to establish that the source of all or most of the dust was the Ditta facility, especially given the fact that there were several unpaved parking lots in the vicinity. One witness, who represented plaintiff Tri-Gas, Inc., admitted he had experienced no increased dust due to the presence of the Ditta facility.
With regard to flooding, the evidence clearly showed that the area had always been prone to flooding. Plaintiffs failed to establish that any significant increase in flooding had occurred since the Ditta plant was built.
In Although the plaintiffs established that there is heavy truck traffic on Tchoupitoulas, there was insufficient evidence to prove this traffic was caused or even significantly increased by Ditta, whose trucks merely contribute to the traffic congestion, as do virtually all of the plaintiffs’ businesses, which also use trucks.
To refute the evidence on nuisance, defendants presented the testimony of a representative of Glazer Steel and Aluminum, another neighbor of the Ditta facility, that he had experienced no new dust, noise, vibration, or flooding problems attributable to the Ditta facility.
As the court said in Barrett v. T.L. James & Co., supra, the character of the neighborhood is an element to be considered when an activity is alleged to be a nuisance. That court also recognized the applicability of C.C. art. 669 to a nuisance case and the principle that whether an inconvenience is excessive or not is to be determined in the light of local ordinance or customs. The character of this neighborhood is industrial. Before Ditta built the plant, the property was overgrown with weeds and filled with trash. Even a dead body had been found there. Close by the property is a sand blasting plant. One of the plaintiffs’ customers who chooses to have his residence in this area complains about the Ditta plant, but admits that he is across the street from a heavy industrial zone. Tchoupitoulas Street in front of the Ditta plant is the main artery for all heavy truck traffic headed toward the wharves along the Mississippi River and eventually this same traffic leaving the wharves will be routed along Religious Street, in the rear of Ditta’s plant. Plaintiffs speculate that this area is destined to become one day an upscale residential section like the Warehouse District in the city, but at the present it is industrial zoned and being used as such. Ditta’s plant is compatible with the present condition of the neighborhood and the zoning in effect when the plant was | ^built. We have concluded that the trial judge did not err in determining that the Ditta operation was not a nuisance.
Plaintiffs also contend that the trial judge erred by refusing to consider nuisance evidence relative to Ditta’s concrete batching facility formerly located on South Peters Street, two blocks away from the Tchoupitoulas location, which plant was closed down prior to trial. The trial judge is vested with wide discretion in determining the relevancy of evidence, and his determination will not be disturbed on appeal in the absence of clear abuse of that discretion. Barrett v. T.L. James & Co., Inc., supra, at p. 14, 671 So.2d at 1194; *49 Tramontin v. Glass, 95-744, pp. 6-7 (La.App. 5 Cir. 1/80/96), 668 So.2d 1252, 1256. In this case, we find no abuse of discretion in the trial judge’s refusal to consider, on grounds of relevancy, evidence concerning the operation of any facility other than the one under scrutiny.
Accordingly, the judgment is affirmed.

AFFIRMED.